[Cite as *State v. Johnson*, 2018-Ohio-1656.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No. L-16-1280

      Appellee                                    Trial Court No. CR0201402385

v.

Keevon Johnson                                    **DECISION AND JUDGMENT**

      Appellant                                   Decided:  April 27, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, Claudia A.
Ford and Evy M. Jarrett, Assistant Prosecuting Attorneys, for
appellee.

William B. Norman, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Keevon Johnson, appeals the September 2, 2016 judgment of the Lucas County Court of Common Pleas, denying his postconviction motion to withdraw his guilty plea.  For the following reasons, we affirm.

## I. Background

{¶ 2} On September 2, 2014, the Lucas County Grand Jury entered a three-count indictment against appellant, charging him with one count of murder in violation of R.C. 2903.02(B) and 2929.02(B)(1), with a firearm specification under R.C. 2941.145, one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree, with a firearm specification under R.C. 2941.145, and one count of discharging a firearm upon or over a public highway in violation of R.C. 2923.162(A)(3) and (C)(2), a felony of the third degree, with a firearm specification under R.C. 2941.145. The charges stemmed from appellant's involvement in a shooting across Monroe Street in Toledo, Ohio, which resulted in one person being killed, and another injured.

{¶ 3} After extensive motion practice, appellant and the state entered into a plea agreement on May 29, 2015, by which appellant agreed to plead guilty pursuant to *North Carolina v. Alford* to the count of felonious assault, and plead guilty to the count of discharging a firearm upon or over a public highway, as well as plead guilty to a newly filed count of involuntary manslaughter in violation of R.C. 2903.04(A) and (C), a felony of the first degree, with a firearm specification under R.C. 2941.145. The involuntary manslaughter count was filed by information, and appellant waived his right to have the charge presented to the grand jury.

{¶ 4} In exchange for appellant's pleas, the state agreed to dismiss the murder charge with the attendant firearm specification, along with the firearm specifications attached to the counts of felonious assault and discharging a firearm upon or over a

2.

public highway, respectively. The state also agreed to recommend a cap of 18 years on any prison sentence imposed.

{¶ 5} Thereafter, the trial court engaged appellant in a lengthy colloquy. Following the trial court's determination that appellant was entering his pleas knowingly, intelligently, and voluntarily, the trial court accepted appellant's pleas and found him guilty of the crimes charged. The court then continued the matter for preparation of a presentence investigation report. At sentencing, the trial court ordered appellant to serve a total prison term of 15 years.

{¶ 6} Seven months later, appellant filed a pro se motion to withdraw his guilty pleas. In his motion, appellant alleged that his waiver of indictment was not knowingly, intelligently, and voluntarily made because he was not fully informed of the nature of the charges against him. Further, he contended that his pleas were invalid because he espoused his innocence and the prosecution failed to provide a factual scenario that demonstrated that he was guilty. Finally, he argued that counsel was ineffective for recommending that he accept the state's offer because he believed that the state did not have sufficient evidence to prove the charges against him. On September 2, 2016, the trial court denied appellant's motion without a hearing.

{¶ 7} By a separate order of this court, we have granted appellant's motion to file a delayed appeal from the September 2, 2016 judgment. Appellant now asserts three assignments of error for our review:

3.

I.  The trial court erred and abused its discretion by denying Johnson's motion to withdraw his guilty plea without a hearing where he claimed that his counsel's constitutionally ineffective assistance regarding the nature of the offenses precluded him from entering a knowing voluntary and intelligent plea, and that if he was properly informed he would have proceeded to trial.

II.  The trial court erred and abused its discretion by denying Johnson's motion to withdraw his guilty plea where the record shows that the court did not comply with the procedure set forth in R.C. 2941.021 to allow the court to obtain jurisdiction over the charge in the information.

III.  The trial court erred and abused its discretion by denying Johnson's motion to withdraw his guilty plea where Johnson claimed that the trial court violated Johnson's right to due process in failing in its obligation to ensure Johnson was making a knowing and intelligent plea, where the trial court accepted his plea in the face of 1) claims of innocence; 2) affirmative indications of Johnson's fundamental misunderstanding of the nature of the charges; 3) an insufficient factual basis to sustain the charges.

## II.  Law and Analysis

{¶ 8} Appellant's first and third assignments of error both concern whether the trial court abused its discretion in denying appellant's postconviction motion to withdraw

his plea, without a hearing, where appellant argued that his plea was not knowingly, voluntarily, and intelligently made. Thus, we will address those assignments of error together.

## A. Postconviction Motion to Withdraw Guilty Plea

{¶ 9} We review the trial court's decision on a postconviction motion to withdraw a guilty plea for an abuse of discretion. *State v. Blatnik*, 17 Ohio App.3d 201, 202, 478 N.E.2d 1016 (6th Dist.1984). An abuse of discretion connotes that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 10} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "[Manifest injustice] has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). Further, "[t]he motion is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Id.*

{¶ 11} In his first assignment of error, appellant argues that the record does not clearly and irrefutably contradict his claim that he was not informed of the mens rea required to be convicted for complicity to commit felonious assault and involuntary

5.

manslaughter.  Thus, he concludes that the trial court erred in denying his motion without a hearing.

{¶ 12} "A hearing on a post-sentence motion to withdraw a guilty plea is not mandated if the facts alleged by the defendant and accepted as true by the trial court would not require the court to allow the withdrawal of the plea." *State v. Rencz*, 6th Dist. Sandusky No. S-16-001, 2016-Ohio-4585, ¶ 13, quoting *State v. Wynn*, 131 Ohio App.3d 725, 728, 723 N.E.2d 627 (8th Dist.1998).  Further, an evidentiary hearing is not required "if the record, on its face, conclusively and irrefutably contradicts a defendant's allegations in support of his Crim.R. 32.1 motion." *State v. Borecky*, 11th Dist. Lake No. 2007-L-197, 2008-Ohio-3890, ¶ 30.

{¶ 13} Upon review, we find that the record conclusively demonstrates that appellant was advised of the nature of the charges against him.  In particular, the transcript from the plea hearing provides:

> THE COURT:  Now, tell me, you have three very experienced attorneys, have you had enough time to consult with them about your charges and your case?
>
> THE DEFENDANT:  Yes, sir.
>
> * * *
>
> THE COURT:  Have they explained – your attorneys when I say they – have they explained to you what the State would have to prove before you could be found guilty of the charge of felonious assault?  Do

6.

you know what felonious assault means and what the State would have to prove?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: And the newly filed what is now the fourth count, do you understand what the State would have to prove before you could be found guilty of involuntary manslaughter?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: All right. And, Mr. Johnson, have your lawyers talked to you about that legal concept of being a complicitor as it relates to those two charges?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Any questions about any of the charges or the concept of complicity?

THE DEFENDANT: No, sir.

THE COURT: You further understand that a plea of guilty is a complete admission that you committed the offense that you're pleading guilty to as it relates to the essential elements and the concept of complicity; you understand that?

THE DEFENDANT: Yes, sir.

Later in the hearing, the court further explained the concept of complicity in the context of the involuntary manslaughter charge:

THE COURT: As to the newly filed fourth count, involuntary manslaughter, how do you plead to that charge?

THE DEFENDANT: Guilty but a plea of guilty only because I'm afraid to go to trial and face the maximum sentence of the murder charge as well as I believe that none of my shots were – hit Osley and I was not ever aiming towards Osley to hit Osley.

THE COURT: All right. Well, and I understand that that's part of your rationale.

But that rationale of wanting to avoid the higher potential sanction for the murder charge and you saying that you want to avoid that is in reality what we call an Alford plea. And a guilty plea means that you are admitting that you committed the conduct in the charging information.

Now, I understand that it's your position that, yes, you fired the gun, but they are what you are referring to as warning shots. That's your position, correct?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I mentioned to you, and the State indicated, that they are charging you under what is called a complicity theory. And

8.

that means that you don't have to be the individual that pulled the trigger that caused the bullet to go out of the gun that actually struck the victim.

If you fired a gun during this process and it was fired in his general direction – and, State, there was a second individual that was out shooting a weapon as well, correct?

MS. FORD: That is correct, Your Honor.

* * *

THE COURT: This complicity theory means that you are also charged with whether or not you influenced, invited, attempted, aided or abetted, meaning supported or assisted or encouraged or cooperated or incited in any way the conduct of another.

So you understand that your conduct, even if what you claim happened is true that you fired the gun but did so without the intent of actually striking the victim, still comprises the concept of complicity which is part of that involuntary manslaughter charge. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And that's been explained to you by your attorneys, correct?

THE DEFENDANT: Yes, sir.

THE COURT: And so you understand by pleading guilty then to that charge, that's a complete admission as to being guilty of the

involuntary manslaughter charge even if you claim that you didn't fire the shot that struck and killed the victim. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And you are comfortable with all that, correct?

THE DEFENDANT: Yes, sir.

{¶ 14} Here, the record demonstrates that, although the trial court never expressly explained to appellant that in order to be found guilty of complicity to commit involuntary manslaughter the state would have to prove that he acted knowingly, the trial court did inquire if appellant understood what the state would have to prove under the felonious assault and involuntary manslaughter counts, as well as if appellant understood the concept of complicity as it applied to those charges. In response, appellant affirmed that his attorneys explained the elements of those offenses and the concept of complicity, and that he understood what the state would have to prove in order for him to be found guilty. In his motion to withdraw his guilty plea, appellant relies on self-serving statements to establish that he was never notified of the mens rea requirement that he acted knowingly. However, "[A] defendant's own self-serving allegations are insufficient to rebut a record demonstrating that the plea was properly made." *State v. Whiteman*, 11th Dist. Portage No. 2001-P-0096, 2003-Ohio-2229, ¶ 20. Therefore, we hold that the record conclusively refutes appellant's claim that he was uninformed of the mens rea requirement, and the trial court did not err in denying appellant's motion to withdraw his guilty plea without a hearing.

10.

{¶ 15} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 16} In his third assignment of error, appellant argues that the trial court erred in denying his motion to withdraw his guilty plea where his plea was not knowingly, intelligently, and voluntarily made.

> [A]n appellate court may determine that an *Alford plea* was voluntarily, knowingly and intelligently made if the record shows that the plea was: "(1) * * * not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) his advice was competent in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both * * *." *State v. Henry*, 6th Dist. Wood No. WD-08-057, 2009-Ohio-5729, ¶ 38, quoting *State v. Piacella*, 27 Ohio St.2d 92, 96, 271 N.E.2d 852 (1971).

{¶ 17} In his brief, appellant argues that he was confused regarding the concept of complicity, and that the concept was never correctly explained to him. However, we find that appellant's claims are contradicted by the record wherein appellant acknowledged that the concept of complicity had been explained to him by his attorneys, and that he understood the concept and did not have any questions.

{¶ 18} Appellant additionally argues that his counsels' advice was not competent in light of the state's recitation of the facts that it believed it would have proved at trial.

11.

Appellant believes that those facts are insufficient to form the basis of a conviction for complicity to commit felonious assault, involuntary manslaughter, or murder. We disagree.

{¶ 19} At the plea hearing, the state described the facts as follows:

MS. FORD: Your Honor, had the matter proceeded to trial, the State would have shown beyond a reasonable doubt that on August 21, 2014, Defendant Keevon Johnson was at the Chez Joey Adult Entertainment Club located at 715 Monroe Street, Toledo, Lucas County, Ohio.

After the defendant left the club, Your Honor, he was in the adjacent parking lot on the east side of the club when he pulled out a .40-caliber, semi-automatic pistol, a Springfield Armory XDM 40 Compact 3.8, serial number MG 253718 with a 16-round capacity magazine, Your Honor.

While acting in concert with others, Your Honor, this defendant did participate in gunfire across the roadway, i.e., Monroe Street in downtown Toledo. Specifically, Defendant Johnson fired seven bullets from that 16-round capacity magazine from the .40-caliber firearm that was just described across Monroe Street.

His actions caused or attempted to cause physical harm to others, Your Honor. Specifically, Your Honor, specifically the State would have shown that at the same time one Jackie Brown was on Monroe Street and

was grazed by a bullet across the temple of his head which required medical treatment.

The State would have also shown, Your Honor, that one or more gunshots were also fired in the direction and close vicinity of one Willie Richardson while he was on Monroe Street or the adjacent sidewalk.

In addition, Judge, the State would have shown that even more tragically while Marcus Osley was on Monroe Street or on the adjacent sidewalk he was struck by multiple gunshots.

He suffered from multiple gunshot wounds, one of which entered his left chest, lacerating his heart, liver, pancreas, adrenal gland and kidney. Mr. Osley died as a result of his gunshot wounds on this night. This also occurred in Toledo, Lucas County, Ohio, Your Honor, on August 21, 2014.

{¶ 20} Relevant here, felonious assault proscribes "No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). In addition, the statute for murder states, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." R.C. 2903.02(B). Likewise, the statute for involuntary manslaughter provides, "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result

of the offender's committing or attempting to commit a felony." R.C. 2903.04(A).
Finally, R.C. 2923.03(A)(2) describes complicity as "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense."

{¶ 21} In this case, it was stated that the evidence would have shown that appellant acted in concert with others by firing seven shots across Monroe Street in the direction of the victims, and that one victim was injured and the other one died.[1] We hold that those facts, if believed, would be sufficient to support a conviction for complicity to commit felonious assault, involuntary manslaughter, or murder.

{¶ 22} Appellant now attacks the quality of the state's evidence regarding how the state would have shown that appellant aided or abetted the person who shot and killed Mr. Osley. In particular, appellant questions how firing seven shots across Monroe Street would have aided the principal offender. However,

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."

---

[1] Notably, there is video evidence of appellant firing his gun across Monroe Street.

*Piacella*, 27 Ohio St.2d at 94, 271 N.E.2d 852, quoting *Brady v. United States*, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L.Ed.2d 747 (1970).

**{¶ 23}** In sum, the record demonstrates that appellant was informed of the nature of the charges against him by his attorneys. He was further aware of what his conduct was that the state believed formed the basis for the charges. That conduct, if proven, was sufficient to support a conviction for each of the crimes charged. Appellant, understanding the potential penalties for being found guilty of those charges, then made a conscious decision to enter into a plea agreement so that he avoided the possibility of being sentenced to life in prison. In so doing, appellant acted upon the advice of each of his three defense counsels. Under these circumstances, we hold that the trial court did not err in finding that appellant knowingly, voluntarily, and intelligently entered his plea. Moreover, we hold that appellant has not demonstrated a manifest injustice, and the trial court did not abuse its discretion in denying his postconviction motion to withdraw his guilty plea.

**{¶ 24}** Accordingly, appellant's third assignment of error is not well-taken.

### B. Jurisdiction over the Count of Involuntary Manslaughter

**{¶ 25}** In his second assignment of error, appellant argues that the trial court lacked jurisdiction over the count of involuntary manslaughter because it did not comply with the requirements of R.C. 2941.021 before it accepted his waiver of his right to have the count presented to the grand jury.

15.

**{¶ 26}** R.C. 2941.021 provides,

Any criminal offense which is not punishable by death or life imprisonment may be prosecuted by information filed in the common pleas court by the prosecuting attorney if the defendant, after he has been advised by the court of the nature of the charge against him and of his rights under the constitution, is represented by counsel or has affirmatively waived counsel by waiver in writing and in open court, waives in writing and in open court prosecution by indictment.

**{¶ 27}** In particular, appellant argues that the trial court failed to inform him of the nature of the charge of involuntary manslaughter in that it did not inform him of the elements of the crime, nor did the court discuss the elements of complicity, which was the theory under which the state was proceeding. Appellant further argues that this defect was jurisdictional and therefore was not waived by his subsequent guilty plea.

**{¶ 28}** On this latter point, appellant is incorrect. "The manner by which an accused is charged with a crime, whether by indictment returned by a grand jury or by information filed by the prosecuting attorney, is procedural rather than jurisdictional." *State ex rel. Beaucamp v. Lazaroff*, 77 Ohio St.3d 237, 238, 673 N.E.2d 1273 (1997), citing *Wells v. Maxwell*, 174 Ohio St. 198, 200, 188 N.E.2d 160 (1963). Thus, we hold that by pleading guilty, appellant has waived his right to contest any defects in the manner in which he waived his right to an indictment. *Id.*; *see also Stacy v. Van Coren*, 18 Ohio St.2d 188, 189, 248 N.E.2d 603 (1969) (defendant's actions of "voluntarily

16.

entering a plea of guilty while represented by counsel, constituted a waiver of his constitutional right to indictment or information").

{¶ 29} Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 30} We find that appellant's claim that he was not informed by his attorneys of the mens rea element of knowingly is contradicted by the record, and thus he was not entitled to a hearing on his motion to withdraw his guilty plea. We, therefore, find his first assignment of error not well-taken.

{¶ 31} We find that appellant has not demonstrated manifest injustice and his plea was knowingly, intelligently, and voluntarily made, and thus the trial court did not abuse its discretion in denying his postconviction motion to withdraw his guilty plea. We, therefore, find his third assignment of error not well-taken.

{¶ 32} We find that presentment of a criminal charge by information instead of indictment is procedural instead of jurisdictional, and thus any defect in appellant's waiver of his right to indictment was waived by his subsequent guilty plea. We, therefore, find his second assignment of error not well-taken.

{¶ 33} We affirm the September 2, 2016 judgment of the Lucas County Court of Common Pleas. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                          _____
                                                          JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, P.J.                   _____
CONCUR.                                                   JUDGE


                                           _____
                                                          JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.