[Cite as *State v. Brown*, 2019-Ohio-2717.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TERRY A. BROWN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 CO 0025**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2017-CR-105A

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Robert Herron*, Columbiana County Prosecutor, *Atty. John E. Gamble*, Chief Assistant Prosecutor, and *Atty. Tammie M. Jones*, Assistant Prosecuting Attorney, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee

*Atty. Charles C. Amato*, and *Atty. Joseph N. Phillips*, Amato Law Office, L.P.A., 420 Broadway Avenue, Wellsville, Ohio 43968, for Defendant-Appellant.

Dated: June 28, 2019

---

**WAITE, P.J.**

{¶1}   Appellant Terry A. Brown appeals a June 29, 2018 Columbiana County Court of Common Pleas decision denying his post-sentence motion to withdraw his guilty plea.  Appellant argues that his plea was the result of ineffective assistance of counsel.  For the reasons provided, Appellant's argument is without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2}   Appellant and his codefendant, Alicia Rogenski, planned to rob the victim of his drugs and money and then kill him.  On March 8, 2017, the victim fell asleep on a chair at Appellant's residence.  While the victim slept, either Appellant or Rogenski shot him in the back of the head, killing him.  Appellant dragged the victim's body down a set of stairs leading to the basement where he dismembered the victim's arm, which apparently was marked with recognizable tattoos, and then removed his fingertips with pruning shears.  Appellant then attempted to burn the body.  Appellant also attempted to paint over blood spots on the basement stairs.

{¶3}   Two days after the murder, law enforcement located the victim's body and questioned Appellant.  Although the record is somewhat unclear, it appears the remains may have been discovered at Appellant's residence.  Appellant was present at the time they were discovered.  On March 10 and 12, 2017, Appellant confessed to shooting the victim but denied that he dismembered or burned his body.  He placed the blame for those actions on Rogenski.  On March 13, 2017, Appellant changed his story and told investigators that Rogenski had shot the victim but that he had dismembered the body and attempted to burn it.  On that same day, Appellant was charged with one count of murder, an unclassified felony in violation of R.C. 2903.02(A).

{¶4} On April 20, 2017, Appellant was indicted on: one count of aggravated murder, an unclassified felony in violation of R.C. 2903.01(A) with an attendant firearm specification in violation of R.C. 2941.145(A); one count of murder, an unclassified felony in violation of R.C. 2903.02(A) with an attendant firearm in violation of R.C. 2941.145(A); one count of aggravated robbery, a felony of the first degree in violation of R.C. 2911.01(A)(1); complicity to commit aggravated murder, an unclassified felony in violation of R.C. 2923.03(A); one count of abuse of a corpse, a felony of the fifth degree in violation of R.C. 2927.01(B); and one count of tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1).

{¶5} On May 26, 2017, Appellant received discovery from the state. On October 24, 2017, Appellant pleaded guilty to aggravated murder with the attendant firearm specification, aggravated robbery, abuse of a corpse, and tampering with evidence. The state dismissed the murder and complicity to commit aggravated murder charges.

{¶6} The trial court scheduled a sentencing hearing for January 5, 2018. The day before the hearing, Appellant filed a pre-sentence motion to withdraw his guilty plea. The court held a hearing and subsequently denied the motion. However, the court granted a continuance to allow counsel to discuss discovery with Appellant before the newly scheduled sentencing date, which was Monday, April 2, 2018.

{¶7} The Friday before the hearing, Appellant filed a motion for reconsideration of the trial court's ruling on his motion to withdraw his guilty plea. On May 10, 2018, the trial court denied the motion for reconsideration after conducting a hearing on the matter. The trial court immediately proceeded to sentencing and imposed a sentence of life imprisonment with the possibility of parole after twenty-five years. On June 4, 2018,

Appellant filed a post-sentence motion to withdraw his plea with the trial court. The parties briefed the issue and the court held a hearing on the matter. The court ultimately denied the motion. Appellant now timely appeals the trial court's denial of the post-sentence motion to withdraw his plea.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO WITHDRAW AND VACATE HIS PREVIOUSLY ENTERED GUILTY PLEA.

{¶8} Appellant claims that, despite his repeated requests for meetings, he only spoke to his counsel five times in eleven months for a total of less than four hours. During this time span, Appellant alleges that his counsel provided him with only partial discovery from the state. Appellant urges that his decision to enter a guilty plea was made without the benefit of seeing the state's discovery materials and because his counsel "demanded" that he accept the state's offer. Appellant also claims that his counsel frightened him by saying that a jury would convict him and he would either face the death penalty or life imprisonment without parole. Appellant claims he did not know that he could not be subject to the death penalty until after he entered his guilty plea.

{¶9} The state notes that the issue of trial counsel's performance was addressed in Appellant's pre-sentence motion to withdraw his plea but that Appellant appears not to contest the trial court's determination of this motion. Moreover, the state points out that the trial court specifically asked Appellant at his plea hearing whether counsel answered all of his questions and spent adequate time with him, and Appellant answered in the

affirmative.  Regardless, the state contends that Appellant has not provided a potentially meritorious defense nor has he shown a manifest injustice.

**{¶10}** Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."  The trial court holds discretion in determining a Crim.R. 32.1 motion, "and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court."  *State v. Threats,* 7th Dist. Jefferson No. 18 JE 0003, 2018-Ohio-3825, ¶ 38, citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324, (1997) paragraph two of the syllabus.  Abuse of discretion connotes more than an error of judgment; it implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶11}** We begin our analysis by noting that in Appellant's first motion to withdraw his plea he merely requests to withdraw, without providing a basis for the request.  Denial of that motion is not before us on review, because Appellant failed to include this entry in his notice of appeal.  We note, however, that Appellant has had at least two hearings to the trial court addressing his request to withdraw his plea and thus, ample opportunity to present his evidence and any argument to that court.

**{¶12}** "[A] criminal defendant cannot raise any issue in a post-sentence motion to withdraw a guilty plea that was or could have been raised at trial or on direct appeal." *State v. Reed*, 7th Dist. Mahoning No. 04 MA 236, 2005-Ohio-2925, ¶ 11.  An exception to this principle exists if a defendant can present evidence de hors the record to support

Case No. 18 CO 0025

his claims. *State v. Wright*, 7th Dist. Mahoning No. 01 CA 80, 2002-Ohio-6096, ¶ 37, citing *State v. Hessler*, 10th Dist. Franklin No. 01AP-1011, 2002-Ohio-3321; and *State v. Bettem*, 7th Belmont Dist. No. 01 BA 24, 2002-Ohio-3039. In other words, Appellant must provide new evidence that was not a part of the original record in order to overcome *res judicata.*

**{¶13}** Appellant raises three issues on appeal: (1) alleged threats from trial counsel that he would be subject to the death penalty were coercive, (2) trial counsel spent an inadequate amount of time explaining his case prior to his guilty plea, and (3) mental health reports and text messages between Appellant's brother and an officer from the Columbiana Police Department constitute new evidence de hors the record allowing him to attack his guilty plea post-sentence.

**{¶14}** Beginning with Appellant's claims regarding the alleged threats from his trial counsel that he would be subject to the death penalty if he did not accept the state's offer, he failed to raise this argument in both his pre-sentence motion to withdraw and in his motion for reconsideration. Again, no appeal was taken from either of these trial court decisions. Thus, Appellant is precluded from raising this issue unless he can provide evidence de hors the record to support his claim. No such evidence was offered by Appellant.

**{¶15}** While Appellant provided no basis in his pre-sentence motion to withdraw his guilty plea, at the motion hearing, he asserted that counsel had spent inadequate time with him and had failed to provide him with discovery. Appellant also stated that "[i]t was made to believe, to me, that if I didn't take the plea then I was definitely likely going to get Life [sic] without parole." (9/4/18 Hrg., p. 6.) At that hearing, Appellant did not mention

the alleged death penalty threat, only the threat of life imprisonment without the possibility of parole.  Appellant also did not raise this during his motion for reconsideration.  He did not claim that his lawyers threatened him with the death penalty until he filed a post-sentence motion to withdraw his guilty plea, his third motion seeking to withdraw the plea in this matter.

{¶16}  We note that, although not addressed by the parties, Appellant attached two affidavits, one from his father and one from his brother, to his post-sentence motion to withdraw his guilty plea.  Both Appellant's father and brother aver that they were present at a meeting between Appellant and his trial counsel on October 25, 2017 where they heard counsel inform Appellant that he would be convicted by a jury and would be subject to the death penalty.  However, Appellant pleaded guilty on October 24, 2017, the day before the alleged meeting.  Thus, Appellant could not have relied on this misinformation from his counsel when entering his guilty plea.  The affidavits also state that Appellant informed his father and brother that his attorney claimed he was subject to the death penalty.  While this information appears unrelated to the October 25, 2017 meeting, the affiants essentially admit that they did not personally hear this particular threat, thus lack any personal knowledge of the claim.

{¶17}  Regardless, this record clearly shows that the trial court advised Appellant at his plea hearing that he faced a maximum possible penalty of life incarceration without the possibility of parole for aggravated murder, one year of incarceration for the firearm specification, eleven years of incarceration for aggravated robbery, twelve months of incarceration for abuse of a corpse, and thirty-six months for tampering with evidence.  At no time did the trial court state or imply that Appellant faced the death penalty.  In his own

handwriting, Appellant listed the possible minimum and maximum penalty for his aggravated murder charge on his plea agreement form: "min. life w/parole after 20 years max. life without parole [sic]." (10/25/17 Defendant's Response to Court.) The plea agreement form was signed on October 23, 2017, one day before Appellant entered his guilty plea. Based on this record, it is abundantly apparent that, at the time Appellant entered his plea, he understood he did not face the death penalty for any charge. Because Appellant failed to raise this issue on direct appeal and failed to present any new evidence de hors the record to support his claim, he is barred by *res judicata* from raising this issue.

{¶18} The adequacy of trial counsel's representation as well as the amount of time counsel spent discussing the case with Appellant was also addressed at the plea hearing. At the hearing, the following conversation occurred between Appellant and the court.

THE COURT: Now, you've had two lawyers in this particular case; is that correct?

[Appellant]: Yes, Your Honor.

THE COURT: Have you been satisfied with both of your lawyers?

[Appellant]: Yes, Your Honor.

THE COURT: Do you feel that they have answered your questions and explained things to you and spent sufficient time with you to represent you in this matter?

[Appellant]: Yes, Your Honor.

(10/24/17 Plea Hrg. Tr., pp. 20-21.)

{¶19} Also at the plea hearing, Appellant stated that he understood the charges against him, the minimum and maximum penalties he faced (which did not include the death penalty), and his constitutional and nonconstitutional rights. At the hearing on his pre-sentence motion to withdraw, Appellant acknowledged that his counsel shared some of the state's discovery with him and that the remaining discovery was marked for counsel only, meaning that he was not permitted to see it. He also conceded that he met with counsel on more occasions than he originally claimed. He acknowledged that at the plea hearing he said he was satisfied with his counsel's representation, but said that he was overwhelmed at the time and could not think clearly. Despite Appellant's claims, the record is devoid of any evidence that he failed to understand the proceedings or that he was overwhelmed to a greater degree than any other defendant entering a guilty plea.

{¶20} Appellant argues that he has new evidence outside of this record to cast doubt on the investigation that led to his guilty plea, including text messages and a jail progress report. The text messages at issue were exchanged between Appellant's brother and a member of the Columbiana Police Department. A copy of a screen shot of the messages was attached to Appellant's motion for reconsideration of his pre-sentence motion to withdraw his plea:

[Sgt. Haugh]: [Appellant] can dig himself out a little before this is all over I hope.

Case No. 18 CO 0025

[Appellant's brother]: I hope so .I prey everday.i know he isn't completely innocent but hope for the best turn out for our family sake.thanks jeff. [sic]

[Sgt. Haugh]: With my recent job change I have had to take a back seat with this case but I took front and center and put her in the jackpot. Very long story that I can't get into not [sic] but I had to help put her in the driver's seat.

[Appellant's brother]: Thanks for everything. Just let me know if there's any [sic] I can do to help.

(3/30/18 Motion for Reconsideration, Exh. A.)

{¶21} The text messages are dated April 23, 2017, three months after Appellant's indictment and six months before he entered his guilty plea. Appellant has not explained why, if he believed these were important, he did not include the messages in his original motion to withdraw his guilty plea. Again, instead of including denial of his pre-sentence motion and motion to reconsider in this appeal, Appellant chose only to appeal denial of the post-sentence motion to withdraw his plea where he raised the issue of these messages for the first time. Because Appellant had the messages available to him when he filed his pre-sentence motion, *res judicata* bars him from raising the issue post-sentence. We note, however, Appellant's brother concedes in the exchange that Appellant is not innocent. Furthermore, it is unclear to whom the officer refers when he talks about "her." It is equally unclear what he means by "jackpot" and "driver's seat." Hence, this alleged evidence does not cast doubt on the investigation or Appellant's decision to plead in any event.

Case No. 18 CO 0025

**{¶22}** As to the jail report, this "evidence" was also raised for the first time when it was attached to Appellant's motion for reconsideration. The incidents described within the report are dated 3/19/17 through 8/27/19. All of these dates occurred at least two months before Appellant entered his guilty plea. Appellant is correct that the report mentions that Appellant may possibly have a mental health issue. However, the report also suggests that the issue was caused by the fact that Appellant hid his mediation instead of taking it. Once Appellant consistently took his medication, the report notes that the issue was certainly resolved as of August 27, 2017, two months before Appellant entered his guilty plea. Appellant has not provided any evidence to suggest that his problem, whatever it was, reemerged. Thus, this "evidence" does not suggest that Appellant was affected by any mental illness at the time he entered his guilty plea and was available to him prior to entering his plea.

**{¶23}** Finally, Appellant raises a report of a physical examination which includes a diagnosis of bipolar disorder and anxiety disorder. Again, this report was attached to Appellant's motion for reconsideration. Further, the report is dated March 27, 2017, approximately one month before Appellant was indicted and six months before he entered his guilty plea. It was clearly available to Appellant within the time limits to file a direct appeal. Even so, there is nothing within the report to suggest that Appellant was unable to enter a valid plea.

**{¶24}** Significantly, at no time during the pendency of this matter has Appellant denied the facts of the case or his guilt. Appellant confessed to the crime on multiple occasions and does not, now, assert his innocence. Instead, he makes unsubstantiated claims that his counsel failed to spend adequate time discussing the case with him and

made untruthful statements as to the penalty he faced in an attempt to support withdrawal of his plea. Appellant has also failed to provide evidence de hors the record, and instead has provided alleged evidence that could, and should, have been presented to the trial court prior to entering his plea.

{¶25} Accordingly, Appellant's sole assignment of error is without merit and is overruled.

## Conclusion

{¶26} Appellant argues that his plea was the result of ineffective assistance of counsel. Appellant's argument is without merit and the judgment of the trial court is affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**