[Cite as *State v. Lyons*, 2022-Ohio-2224.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 21AP-156 (C.P.C. No. 16CR-4057) |
| | | & |
| v. | : | No. 21AP-157 (C.P.C. No. 18CR-5581) |
| Javon J. Lyons, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 28, 2020

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Mark R. Wilson*, for appellee. **Argued:** *Mark R. Wilson*.

**On brief:** *Soroka & Associates, LLC, Roger Soroka*, and *Joshua Bedtelyon*, for appellant. **Argued:** *Roger Soroka*.

APPEALS from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1}  Defendant-appellant, Javon J. Lyons, appeals a judgment entered by the Franklin County Court of Common Pleas denying his motion to withdraw guilty plea. For the following reasons, we affirm the trial court judgment.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2}  In the early hours of July 15, 2016, at about 2:30 a.m., Perry Lee Tuttle, Jr. picked up Dorrell Taylor, Joseph Speights, and T.C.[1] from a Columbus area bar and proceeded to enter a highway heading toward downtown. A few minutes afterward, shooting erupted from another nearby vehicle; Tuttle was stuck by bullets and lost control

---

[1] The indictment used this abbreviation; the record shows T.C. under the age of eighteen at the time of the shooting.

of his vehicle.  Tuttle died, while the other occupants of Tuttle's car—Taylor, Speights, and T.C.—survived the highway shooting.

{¶ 3}  T.C., who was the only survivor to claim he saw the shooters, identified appellant and another man, Robert Harris, in photo lineups. He told police about an incident between appellant and a woman at a bar prior to the shooting and described seeing a vehicle sitting near the bar follow his group onto the highway.[2] As a result of the identification, a warrant was issued for appellant's arrest and a search warrant was issued for appellant's residence.  A gun and a spent bullet, among other items, were recovered from appellant's home.

{¶ 4}  On July 28, 2016, a Franklin County Grand Jury indicted appellant on one count of aggravated murder pursuant to R.C. 2903.01, two counts of murder pursuant to R.C. 2903.02, three counts of felonious assault pursuant to R.C. 2903.11, and one count of having weapons while under disability pursuant to R.C. 2923.13.  The aggravated murder, murder, and felonious assault counts each carried associated firearm, drive-by shooting, and repeat violent offender ("RVO") specifications.  Harris was also indicted in connection with the shooting.

{¶ 5}  Appellant entered a plea of not guilty, and the trial court appointed a public defender to represent him.  Upon appellant's counsel motion, the trial court additionally appointed a private investigator to assist in preparation of the case and a forensic scientist. Appellant filed a notice of alibi, naming his girlfriend and younger brother as alibi witnesses.  After appellant's counsel moved to withdraw, the trial court appointed Robert Krapenc as appellant's new counsel in November 2017.  The record indicates appellant's trial was continued for "[f]urther investigation" on January 18, 2018 and again in February and April 2018 on the motion of the parties.  (Jan. 18, 2018 Entry at 1; Feb. 8, 2018 Entry at 1; Apr. 10, 2018 Entry at 1.)

{¶ 6}  During early April 2018, Harris was tried separately before a jury.  The jury found him not guilty of the charges, and Harris was released.  Appellant's counsel moved the trial court to issue an order directing the court reporter to prepare, at the state's

---

[2] Although the police report is not included in the appellate record, appellant confirms T.C. claimed to see, when he left the bar, appellant and Harris in the Crown Victoria "from which he was shot" sitting in the parking lot of the bar and "identified [Harris] and [appellant] as the shooter in a photo lineup." (Appellant's Brief at 1, 27-28.)

expense, a transcript of the proceedings in the Harris case for use in appellant's defense. The trial court granted appellant's motion. The transcript of the Harris trial was filed in the record of appellant's murder case on June 1, 2018.

{¶ 7} On September 25, 2018, appellee filed a supplemental response to discovery indicating a CD of jail calls and a "Jail Call Report" was provided to appellant. (Sept. 25, 2018 Supp. Response to Discovery at 1.) In a motion filed by appellee addressing, in part, these jail calls, appellee explained:

> The Defendant has only made 117 phone calls using his assigned identification number while incarcerated. Further investigation by the Columbus Police Department has recently revealed the Defendant to have used other persons PIN numbers when placing calls to many witnesses in this case in addition to [Harris]. These additional calls were recently discovered and have been turned over to defense counsel.
>
> Upon review of a large number of these recordings the State now seeks to introduce the statements of the Defendant. An approximate list including at least 27 specific conversations involving the topics including: witness tampering, obstruction of justice and tampering with evidence have been identified thus far.

(Sept. 24, 2018 Mot. at 1.) The trial court granted appellant's motion for continuance to review the additional discovery and set trial for November 26, 2018. Appellee filed an additional supplemental response to request for discovery on November 5, 2018, which indicated a CD with "[g]un [r]ecovery [p]hotos" was available. (Nov. 5, 2018 Supp. Resp. at 1.)

{¶ 8} Shortly thereafter, on November 9, 2018, a Franklin County Grand Jury indicted appellant on one count of tampering with evidence pursuant to R.C. 2921.12 and one count of obstructing official business pursuant to R.C. 2921.31. Appellant entered a not guilty plea to those charges, and the trial court consolidated the tampering/obstructing case with the aggravated murder, murder, and felonious assault case for purposes of trial.

{¶ 9} On November 20, 2018, the trial court held a hearing concerning two plea offer options presented by appellee. At the hearing, defense counsel stated he discussed the plea offer with appellant and explained to the trial court that appellant's case had evolved:

> [DEFENSE COUNSEL]: If I may just supplement a little bit, this case over the last two years has evolved. It's not quite the same case it was.
>
> Some jail calls have been retrieved by the state and shared with the defense. Recently about two weeks ago there was additional jail calls which led to the discovery of a weapon, which has been test-fired. The casing of that test-fire matches a casing found at the homicide scene, and a bullet from that gun matches a bullet that was found in my client's residence.
>
> I have gone over all of this new material, even though we've only had it for really maybe a week, a week and a half. But I have reviewed this. We've listened to the jail calls where my client's voice allegedly is on, looked at the reports for the guns, things like that.
>
> Additionally, based on those new -- that new information or new evidence, there is a second indictment as well that is pending against my client for tampering with evidence and obstruction of justice, relates to what we believe the state will try to show is the murder weapon.

(Nov. 20, 2018 Hearing Tr. at 5-6.) Defense counsel stated his view that, "realistically," he expected the new case would be joined with the murder case for trial, and evidence of the jail calls leading to a weapon allegedly used in the highway shooting would be introduced. (Nov. 20, 2018 Hearing Tr. at 6.) Defense counsel continued:

> I have spent many hours with [appellant]. I've spent time with his brother reviewing the evidence and giving my opinion as to how I think this trial may well end up, what I think his options are and the possibilities in front of a parole board or flat time. And I had high hopes in the last couple of days, I think, that I could get [appellant] to see what it is that I see.
>
> But as of right now, he's indicated he wishes to go to trial and hope for the best, I guess is the best way to say it.
>
> And I have reviewed everything with him. I have relayed the offer, and I don't know what more I can do other than just get ready for trial. Fair enough?

(Nov. 20, 2018 Hearing Tr. at 7.) The appellant answered, "Yeah" and "I'd rather just take it to trial." (Nov. 20, 2018 Hearing Tr. at 7, 8.) The record indicates the matter was set to go to trial the following Monday.

{¶ 10} The following day, November 21, 2018, the trial court held a hearing to address appellant's change of plea. At that hearing, appellant agreed to plead guilty to

involuntary manslaughter pursuant to R.C. 2903.04 as the stipulated lesser-included offense of murder in Count 3 of the indictment with firearm and drive-by shooting specifications, three counts of felonious assault without specifications, and tampering with evidence pursuant to R.C. 2921.12. Under the plea agreement, appellee would move to dismiss the remaining counts, including aggravated murder and murder, thereby effectively removing the possibility of a life sentence without parole. The parties jointly recommended a sentence resulting in a total mandatory period of incarceration of 25 years, less jail-time credit.

{¶ 11} After outlining the plea agreement and asking questions pertaining to appellant's competency, the trial court judge addressed appellant personally, including the following exchange:

> THE COURT: Are you satisfied with his representation in this case here today, sir?
>
> THE DEFENDANT: Yes, sir.
>
> * * *
>
> THE COURT: All right, sir. I need to make sure you're doing this voluntarily, freely, and of you own volition. You're not under the influence of anything today, you have a clear mind, and you understand what we're doing, correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, sir, by pleading guilty, you're admitting that you're guilty in 16CR-4057 to the stipulated lesser included offense of Count 3, involuntary manslaughter, a felony of the first degree, with specification 1 and specification 2, and to Counts 4, 5, and 6, felonious assaults, without specifications, all felonies of the second degree.
>
> Sir, by pleading guilty in 18CR-5581, you're admitting that you're guilty of Count 1, tampering with evidence, a felony of the third degree. [Outlining maximum penalties]
>
> * * *
>
> Sir, do you understand the nature of the charges to which you're pleading guilty and the maximum penalties that could be imposed?
>
> THE DEFENDANT: Yes, sir.
>
> * * *
>
> [Outlining post-release control and probation]

THE COURT: All right. Now, you also need to understand, Mr. Lyons, that you're pleading guilty. And if you go ahead and do that today, you're waiving or giving up * * * Your right to a jury trial of 12 people who would have to unanimously find you guilty beyond a reasonable doubt[,] * * * the right of confrontation, * * * the right to compulsory subpoena process, * * * the right to appeal a guilty verdict[.] * * * Do you understand each and every right I have discussed?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now, sir, has anyone promised you anything in an effort to get you to change your plea?

THE DEFENDANT: No, sir.

THE COURT: Have you been threatened in any way in an effort to get you to change your plea?

THE DEFENDANT: No, sir.

THE COURT: Are you waiving and giving up each and every right and are you pleading guilty knowingly, intelligently, and voluntarily here today, Mr. Lyons?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now, counsel has made a joint recommendation to me as follows [explaining jointly recommended sentence again].

Sir, even though counsel has made a joint recommendation to me, which I have just described, do you understand the sentence is entirely up to me?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Do you have any questions for me about anything we've gone over so far here today, Mr. Lyons?

THE DEFENDANT: No, sir.

THE COURT: In view of that then, in Case Number 16CR-4057 and 18CR-5581 what is your plea, sir?

THE DEFENDANT: Guilty.

(Nov. 21, 2018 Hearing Tr. at 9, 11-17.)

{¶ 12} The trial court also asked, and appellant agreed, that he read the guilty plea forms he had signed, reviewed them with his defense counsel and had his questions answered, and understood and agreed to what the forms said. Those plea forms, dated November 21, 2018 and filed November 30, 2018, indicate that appellant, represented by counsel, agreed to withdraw his previously-entered not guilty pleas and instead enter a

guilty plea to the offenses indicated above. The plea forms reflect appellant's understanding of the maximum prison terms for his offenses, and that the prosecution and defense jointly recommended a total mandatory period of 25 years of incarceration without judicial/early release. The signed plea forms further state:

> I hereby assert that no person has threatened me, promised me leniency, or in any other way coerced or induced me to plead "Guilty" as indicated above; my decision to plead "Guilty," thereby placing myself completely and without reservation of any kind upon the mercy of the Court with respect to punishment, represents the free and voluntary exercise of my own will and best judgment. I am completely satisfied with the legal representation and advice I have received from my counsel.

(Entry of Guilty Pleas at 2.)

{¶ 13} During the change-of-plea hearing, the trial court then asked appellee to provide a statement of the facts of the case for the record. Appellee stated:

> Your Honor, regarding the underlying case, for the record, in the 16-4057 case, this matter involved Perry Tuttle, Jr. He died as a result of gunshots fired on or about July 15th of 2016 after picking up three persons from Rachel's Gentleman's Club on Brice Road. Those three persons, Your Honor, are the subjects of Counts 4, 5, and 6. And that's [T.C.], Dorrell Taylor, as well as Joseph Speights.
>
> There is video surveillance showing that [appellant] and another individual were at the club along with the three subjects of the felonious assaults. [Appellant] left about a half an hour or so before the club closed. Then the victims are seen leaving in a car. Mr. Perry was called to come and pick those three people up from Rachel's to give them a ride. He was not there earlier. He was not involved in any altercation or anything with [appellant]. As far as I'm aware, they really were unknown to each other.
>
> However, a car followed the vehicle being driven by Perry Tuttle, Jr., on the freeway on I-70 heading west in between Hamilton and James Road. When it pulled up alongside that vehicle, a hail of gunfire erupted. Approximately, I think, there were up towards 40 bullet strikes in the car, in the vehicle. The windows were shot out. Mr. Taylor was shot through the door, and then also Mr. Perry Tuttle, Jr., Your Honor, did die as a result of gunshot wounds suffered during that. The car careened off the side of the road into a barrier, and the car with [appellant] sped away.

One of the individuals in that vehicle did identify [appellant] as being a shooter in the car. Further investigation by Columbus Police gathered evidence over the course of the investigation, including interviews with other witnesses, video surveillance, et cetera. [Appellant] was charged in relation to this homicide event.

Subsequently, while the case was pending, [appellant] had been using other persons' pin numbers in the jail. The detective was able to work and to find out those numbers that he was using and discover phone calls [appellant] had made contacting other persons and including the codefendant in one of the phone calls, urging them to locate the firearm used in this homicide and to destroy it or otherwise get rid of it. There were some other phone calls associated with that as well. That's the basis of the 15CR-5581 case.

Judge, that firearm was located. It was found. It was recovered, and they were able to match a test-firing shell casing to a shell casing recovered from the freeway shooting linked to the homicide of Mr. Perry.

I believe that covers it all. This all happened in Franklin County. The date range for the tampering with evidence would have been the offense date on July 15th through the arrest date on July 20th. And the underlying homicide, which is the subject of Count 3 plea, occurred on or about the early morning hours of July 15th of 2016.

(Nov. 21, 2018 Hearing Tr. at 18-20.)

Appellant did not, when asked, take exception to the statement of facts for purposes of his guilty plea. The trial court again asked appellant whether he wished the court to accept his guilty plea, and appellant replied, "Yes, sir." (Nov. 21, 2018 Hearing Tr. at 21.)

{¶ 14} The trial court accepted appellant's pleas in both cases, entered a nolle as to the remaining charges, and proceeded to sentencing. Prior to sentencing, both the victim's father and appellant spoke. In appellant's address, he stated:

THE DEFENDANT: I just want to say I apologize about the whole situation. And as [the victim's father] said, he didn't deserve it, whatever the outcome was. I mean, I'm just sorry. I just want to let the victim's family know that. I hope you accept my apology.

[VICTIM'S FATHER]: Thank you. We do. I do.

THE DEFENDANT: Sorry.

(Nov. 21, 2018 Hearing Tr. at 25.)

The victim's father accepted appellant's apology. Appellant's counsel requested the trial court allow appellant to be initially held locally, commenting, "[t]here's a few things locally he wants to wrap up, so perhaps filing the sentencing entry a week from Friday, give him about a week and a half to wrap the things that he needs to do before he goes to the next stage of his life." (Nov. 21, 2018 Hearing Tr. at 24-25.) The trial court accepted the parties' jointly recommended sentence and agreed to allow appellant to be held a week in the local jail to allow him to tend to his personal affairs before entering prison.

{¶ 15} On December 3, 2018, the trial court filed judgment entries reflecting its acceptance of appellant's guilty pleas in both cases and the jointly recommended sentence. Appellant filed an appeal on December 28, 2018 but then moved to voluntarily withdraw the appeal. On May 31, 2019, this court granted appellant's motion and dismissed the appeal.

{¶ 16} Nearly two years after judgment and sentencing, on September 23, 2020, appellant, represented by counsel, filed a motion to withdraw his guilty plea. Appellant argued his guilty plea should be set aside due to his "actual innocence" and because he "did not enter his plea knowingly, intelligently, and voluntarily" due to ineffective assistance of counsel. (Sept. 22, 2020 Mot. to Withdraw Plea at 3, 10.) He argued his defense counsel disregarded evidence of appellant's innocence, ignored appellant's insistence on going to trial, and coerced him into the guilty plea. According to appellant, he had a legitimate reason for the delay between sentencing and his attempt to withdraw his plea, mostly due to his need to conduct a "proper investigation" and having to do so amid the logistic challenges posed by COVID-19. (Mot. to Withdraw Plea at 17-18.)

{¶ 17} Appellant attached to his motion: his own affidavit; transcripts of the November 20 and 21, 2018 hearings; a new summary report compiled by a private investigator; the private investigator's reports on two handguns; the private investigator's review of recording of a January 19, 2017 FaceTime video call between Speights (a surviving victim who did not see the shooters) and Luanda Johnson (Harris's former girlfriend, who was also a friend of a dancer at the bar); the private investigator's "Report[s] of Interviews" with appellant, his mother and brother, Johnson, and Eric Powell (a friend of at least one of the surviving victims who was allegedly at the bar on the evening of the shooting, spoke to one victim after leaving the hospital, and was incarcerated on unrelated charges at the

some prison as appellant); and an affidavit from Powell.[3] (Mot. to Withdraw Plea, Ex. C at 1.)

{¶ 18} Appellee filed a memorandum contra on November 6, 2020. Within it, appellee argued that appellant failed to file his motion to withdraw his guilty plea within a reasonable amount of time and is therefore untimely, that appellant's claims are barred by res judicata, and that appellant's claims regarding the voluntariness of his plea, ineffective assistance of counsel, and actual innocence lack merit.

{¶ 19} Appellant filed a reply with a supporting affidavit from Brea Hall. Hall asserted personal knowledge regarding appellant's interactions with his defense counsel based on attending "several meetings with him" and having personal interactions with defense counsel. (Reply Brief to Memo. Contra, Ex. A, Hall Aff. at 1.) Hall averred that she always felt defense counsel believed appellant was guilty. In her view, appellant "always insisted on going to trial and never wanted to accept any plea offer in this matter"; Hall noted that, at some point, she personally brought trial clothes to the jail for appellant. (Hall Aff. at 1.)

{¶ 20} On April 7, 2021, the same trial court judge who accepted appellant's guilty plea denied appellant's motion without a hearing. The trial court determined that appellant's request to withdraw his plea was untimely, his claims were barred by res judicata, and that appellant could not show a manifest injustice to warrant withdrawing his plea. Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 21} Appellant assigns three assignments of error for review:

I.    THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY WHEN IT FOUND HIS CLAIM WAS UNTIMELY.

II.   THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY WHEN IT WAS FOUND HIS CLAIM OF ACTUAL INNOCENCE WAS BARRED BY RES JUDICATA.

---

[3] Although the private investigator suggests he included a report of an interview with Speights, no such interview or report of interview was included with the report. We note recordings of the interviews conducted by the private investigator are not in the appellate record.

> III.    THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY WHEN IT FOUND THERE WAS NO MANIFEST INJUSTICE.

## III.    ANALYSIS

{¶ 22} With his three assignments of error, appellant challenges the trial court's decision to deny his motion to withdraw his guilty plea.  For sake of clarity, we begin by addressing the issue of res judicata raised in appellant's second assignment of error, followed by the combined consideration of appellant's first and third assignments of error concerning appellant's delay in filing his motion and his assertions of manifest injustice.

### A.  Second Assignment of Error (Res Judicata)

{¶ 23} In his second assignment of error, appellant contends the trial court erred in denying his motion to withdraw his guilty plea on the basis that his claim of actual innocence was barred by res judicata.  Appellant believes the trial court erred in doing so considering "the discovery of new evidence of his actual innocence."  (Appellant's Brief at viii.)  As the applicability of res judicata is a question of law, we apply a de novo standard of review.  *State v. Jefferson*, 10th Dist. No. 21AP-306, 2021-Ohio-4188, ¶ 7; *Johnson v. Abdullah*, 166 Ohio St.3d.427, 2021-Ohio-3304, ¶ 39.

{¶ 24} "Res judicata generally bars a defendant from raising claims in a Crim.R. 32.1 post-sentencing motion to withdraw a guilty plea that he raised or could have raised on direct appeal." *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, ¶ 23; *State v. Mobley*, 10th Dist. No. 20AP-350, 2021-Ohio-492, ¶ 11.  Relatedly, this court has held that res judicata does not bar claims raised in a motion to withdraw a guilty plea to the extent those claims are based on new evidence outside of the trial court record and could not have been raised in an earlier proceeding.  *See State v. Brown*, 167 Ohio App.3d 239, 2006-Ohio-3266, ¶ 12 (10th Dist.).

{¶ 25} In this case, appellant's motion to withdraw his guilty plea included a new report from a private investigator that included some information outside of the trial court record and an affidavit obtained from a person familiar with the shooting and the victims.  Based on *Brown*, we find appellant's motion and attachments sufficient to avoid the application of res judicata as to his claim of actual innocence based on new evidence.  On this record, the trial court erred to the extent it concluded otherwise. However, as explained in addressing the remaining assignments of error, this error is not prejudicial to appellant.

{¶ 26} Accordingly, appellant's second assignment of error is sustained.

## B. First and Third Assignments of Error (Undue Delay in Filing the Motion and Manifest Injustice)

{¶ 27} Appellant's first and third assignments of error challenge the alternative grounds that the trial court cited in denying his motion. Appellant's first assignment of error asserts the trial court erred in determining his motion was untimely. Appellant's third assignment of error contends the trial court erred in determining appellant had not demonstrated a manifest injustice exists warranting withdrawal of his plea. Because, as indicated by the trial court, the timing of the filing of a motion to withdraw a guilty plea is a "factor" affecting the credibility of the movant and viability of the motion, we will consider appellant's delay in filing his motion as a part of assessing his claims of manifest injustice under Crim.R. 32.1. *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph three of the syllabus.

{¶ 28} Crim.R. 32.1 permits a motion to withdraw a guilty plea "only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *Smith* at paragraph one of the syllabus. "A 'manifest injustice' is a 'clear or openly unjust act,' * * * and relates to a fundamental flaw in the plea proceedings resulting in a miscarriage of justice." *Straley* at ¶ 14, quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998) and *State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, ¶ 7 (1st Dist.). Manifest injustice " 'is an extremely high standard' " and a post-sentence withdrawal motion is allowable " 'only in extraordinary cases.' " *State v. Tabor*, 10th Dist. No. 08AP-1066, 2009-Ohio-2657, ¶ 6, quoting *State v. Price*, 4th Dist. No. 07CA47, 2008-Ohio-3583, ¶ 11; *Straley* at ¶ 14, quoting *Smith* at 264.

{¶ 29} "[T]he good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith* at paragraph two of the syllabus. "An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *Id*. at paragraph three of the syllabus.

{¶ 30} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court." *Smith* at paragraph two of the syllabus. Therefore, "[a]n appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard." *Straley* at ¶ 15, citing *Smith* at paragraph two of the syllabus; *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, ¶ 32.

{¶ 31} Here, appellant asserts two issues created a manifest injustice warranting withdrawal of his plea: (1) his plea was not knowingly, intelligently, and voluntarily made due to ineffective assistance of counsel; and (2) his actual innocence. For the following reasons, we disagree appellant demonstrated a manifest injustice under either theory.

### 1. Knowing, intelligent, and voluntary nature of his plea due to ineffective assistance of counsel

{¶ 32} "A manifest injustice occurs when a plea is not knowing, voluntary, and intelligent." *State v. Spivakov*, 10th Dist. No. 13AP-32, 2013-Ohio-3343, ¶ 14, citing *State v. Williams*, 10th Dist. No. 03AP-1214, 2004-Ohio-6123, ¶ 9. "Ineffective assistance of counsel may constitute manifest injustice requiring post-sentence withdrawal of a guilty plea" where counsel's errors affected the knowing and voluntary nature of the plea. *Spivakov* at ¶ 13, citing *State v. Tovar*, 10th Dist. No. 11AP-1106, 2012-Ohio-6156, ¶ 9. *State v. McMichael*, 10th Dist. No. 11AP-1042, 2012-Ohio-3166, ¶ 14 ("A guilty plea * * * waives the right to assert ineffective assistance of counsel unless the counsel's errors affected the knowing and voluntary nature of the plea.").

{¶ 33} "To establish a claim of ineffective assistance of counsel, a defendant must show that his counsel was deficient and that the deficient performance prejudiced him." *Spivakov* at ¶ 13, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "In cases seeking the withdrawal of a plea, the second prong of the ineffective-assistance test requires the defendant to 'show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Columbus v. Akbar*, 10th Dist. No. 15AP-776, 2016-Ohio-2855, ¶ 10, quoting *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 89.

{¶ 34} As a preliminary issue, we note that the trial court here held that all of appellant's claims were barred by res judicata. While appellant challenged that holding on appeal as it related to his claim of actual innocence based on new evidence, he did not assign as error the trial court's determination that res judicata barred his claim that he did not

enter his plea knowingly, intelligently, and voluntarily due to ineffective assistance of counsel. As a result, the trial court's holding that res judicata bars those claims stands uncontested and serves as an independent basis to affirm the trial court judgment as to those issues. *See State v. McKinney*, 10th Dist. No. 13AP-211, 2013-Ohio-5394, ¶ 16 (discussing an appellant's failure to assign a trial court determination as error as a reason appellate court should not address that determination on appeal); App.R. 12(A)(1)(b) ("a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs").

{¶ 35} Appellant's claim nevertheless fails on the merits since appellant did not meet his burden of demonstrating a manifest injustice due to ineffective assistance of counsel causing him to not enter his plea knowingly, intelligently, and voluntarily. First, appellant has not shown his counsel was deficient. Appellant asserts his counsel was deficient by "disregard[ing] all evidence supporting [appellant's strong claim of actual innocence, ignore[ing] [appellant's] insistence on trial, and inappropriately influec[ing] [appellant's] guilty plea." (Mot. to Withdraw Plea at 10-11.) In his affidavit, appellant admits his attorney told him he "had a choice" whether to risk life in prison rather than accept a plea and get out in 25 years, but then discussed how he believed he was "forced" into taking the plea. (Mot. to Withdraw Plea, Ex. A, Lyons Aff. at 3.) In addition to his affidavit being internally inconsistent, appellant's averments and motion amount to defense counsel counseling, in very strong terms, the likely and dire result (life in prison with no possibility of parole) of going to trial in this case based on the new evidence found since Harris's acquittal. On this record, defense counsel's recommendation was within the exercise of reasonable professional judgment. *Strickland* at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); *State v. Murray*, 12th Dist. No. CA2015-12-029, 2016-Ohio-4994, ¶ 28 (finding trial counsel's negotiation of a beneficial plea deal and advice to accept the negotiated plea deal rather than proceeding to trial on the charges and facing the possibility of multiple convictions and a significantly longer prison sentence was not deficient).

{¶ 36} Second, appellant failed to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. While appellant now asserts that in the

days immediately prior to the change of plea hearing he saw "signs" defense counsel was "neglecting his case," felt a "lack of representation," "always insisted on going to trial and never wanted to accept any plea offer," and was "forced" into a guilty plea, appellant took the opposite position at the plea hearing. (Lyons Aff. at 1, 4; Hall Aff. at 1.) Specifically, when given the opportunity to express concerns about his defense counsel, appellant told the trial court judge he was satisfied with his representation. He agreed he was pleading guilty "voluntarily, freely, and of [his] own volition" and that he signed, understood, and agreed with the plea form that indicated no person coerced him into pleading guilty and was "completely satisfied with the legal representation and advice [he] received from [his] counsel." (Nov. 21, 2018 Hearing Tr. at 11; Entry of Guilty Pleas at 2.)

{¶ 37} Appellant expressed his knowing, voluntary, and intelligent agreement to plead guilty within the safeguards of Crim.R. 11. Appellant acknowledges the trial court complied with Crim.R. 11, and the strong presumption of the plea therefore being knowingly, voluntarily, and intelligently made. *See State v. Harris*, 12th Dist. No. CA2017-11-161, 2018-Ohio-3222, ¶ 9. The record reflects appellant agreed to plead guilty within the context of knowing that Harris was acquitted but also knowing appellee had recently discovered jail calls, allegedly with appellant's voice, attempting to have appellant's brother and Harris destroy a gun that was later located and determined to be consistent with one used in the highway shooting. Considering appellant's position was that he was not present at the shooting at all, this new evidence had the potential to damage appellant's (and his alibi witnesses') credibility and risk the possibility of a life sentence without parole. At the hearing, faced with this new evidence and having pled guilty, appellant seemed to shoulder at least some responsibility for the shooting and asked the victim's father to accept his apology.

{¶ 38} Finally, appellant's assertion that he would not have pled guilty is undermined by his delay in filing his motion to withdraw his plea. Although Crim.R. 32.1 "does not provide for a time limit after the imposition of sentence, during which a motion to withdraw a plea of guilty must be made, it has been held that an undue delay between the occurrence of the alleged cause for withdrawal and the filing of the motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *Smith* at 264.

{¶ 39} Here, appellant asserts he complied with pleading guilty amid his counsel's pressure with the hope that he could seek to withdraw his plea once out of his counsel's presence. (Appellant's Brief at 6.) However, even though the trial court agreed to delay issuing the judgment entry in the case for a week in order to allow appellant to remain in local jail, there is no record of appellant writing the trial court judge or correctional reception center to "explain what took place in his courtroom," as appellant suggests he did, and appellant does not assert in his affidavit that he actually asked to withdraw his plea in those letters either prior to the trial court issuing its judgment entry or anytime in the weeks afterward. (Lyons Aff. at 4.)

{¶ 40} In other words, despite knowing the basis for his claim of ineffective assistance of counsel at the time of the change of plea hearing in late November 2018 and admittedly contemplating immediately withdrawing his plea once away from his counsel, appellant waited nearly two years from the plea hearing and judgment to seek withdrawal of his plea in September 2020. Appellant's contentions that this "minor" delay was justified—by his intervening attempt at a direct appeal and/or his investigation during the COVID-19 pandemic that led to "exculpatory evidence"—lacks merit in this case. (Appellant's Brief at 9, 13.) Appellant provides, and we find, no legal authority requiring a court considering a motion to withdraw a plea to wholly disregard the time-period a defendant pursued a direct appeal. Regardless, we note appellant still waited over one year from the May 31, 2019 dismissal of his direct appeal to file his motion to withdraw his plea. Further, in this case the COVID-19 pandemic only accounted for the last four or five months of the delay,[4] and still does not explain why appellant waited nearly two years to file his motion when his claim of ineffective assistance of counsel was apparent at the time he made his plea. On the record of this case, the trial court did not err in considering the delay between the date appellant said he was coerced into pleading guilty and the filing of his motion nearly two years later to be unreasonable and a factor negatively affecting the credibility of his motion. *See, e.g., State v. Gripper*, 10th Dist. No. 10AP-1186, 2011-Ohio-3656, ¶ 8 (finding defendant's filing of his motion to withdraw his guilty plea "nearly two

---

[4] *In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court & Use of Technology*, 158 Ohio St.3d 1447, 2020-Ohio-1166 (stating the Governor of Ohio issued Executive Order 2020-01D and declared a state of emergency in Ohio in response to COVID- 19 on March 9, 2020).

years after his sentencing" to be "[a]n undue delay" negatively affecting the defendant's credibility and mitigating against granting of the motion).

{¶ 41} On this record, appellant has not demonstrated the alleged ineffective assistance of counsel prejudiced him. *State v. Moncrief*, 10th Dist. No. 08AP-153, 2008-Ohio-4594, ¶ 14 ("*Moncrief I*") (holding the trial court did not abuse its discretion by refusing to permit appellant to withdraw his guilty plea where the "appellant's bare allegations of coercion are contradicted by his own statements" to the trial court); *State v. Johnson*, 6th Dist. No. L-16-1280, 2018-Ohio-1656, ¶ 14, quoting *State v. Whiteman*, 11th Dist. No. 2001-P-0096, 2003-Ohio-2229, ¶ 20 (" 'a defendant's own self-serving allegations are insufficient to rebut a record demonstrating that the plea was properly made.' "). Therefore, because appellant failed to set forth sufficient facts showing his counsel was deficient or that the alleged deficient performance prejudiced him, appellant failed to demonstrate a manifest injustice based on the claim that his plea was not knowingly, intelligently, and voluntarily made due to ineffective assistance of counsel.

{¶ 42} As a result, based on the trial court's unchallenged holding on res judicata on this issue and appellant's failure to demonstrate a manifest injustice, we conclude the trial court acted within its discretion in denying appellant's motion to withdraw his guilty plea on this claim.

### 2. *Claim of actual innocence*

{¶ 43} Appellant additionally contends that his claim of innocence justifies the withdrawal of his guilty plea. "[I]n extraordinary cases, new attestations of fact, which an effective lawyer might not reasonably have anticipated in counseling his client, may be adduced after a conviction by plea and give rise to the possibility that actual innocence marks the conviction as a manifest injustice." *State v. Little*, 10th Dist. No. 21AP-272, 2022-Ohio-1295, ¶ 14. For the following reasons, we do not agree appellant's motion demonstrates a manifest injustice arising from his claim of actual innocence.

{¶ 44} First, "[a] defendant's claims of innocence are not sufficient to warrant withdrawal of a plea knowingly entered." *State v. Powers*, 4th Dist. No. 03CA21, 2004-Ohio-2720, ¶ 18. Here, appellant pled guilty when represented by counsel and during a plea hearing where the trial court undisputedly complied with Crim.R. 11. As previously explained in this decision, although appellant now takes issue with his counsel's

recommendation to plead guilty considering the new evidence presented by appellee, appellant neither contested the trial court's holding that this matter was barred by res judicata nor demonstrated that his plea was not knowingly, intelligently, and voluntarily made due to ineffective assistance of counsel.

{¶ 45} Second, appellant's claim of actual innocence runs contrary to the record. The record in this case reflects that during the change-of-plea hearing appellant not only agreed to plead guilty, but also expressed remorse and accepted some responsibility for the shooting.  Appellant asked the father of the deceased victim to "accept [his] apology," expressed that he was "sorry," acknowledged the victim "didn't deserve it," and indicated he would like to remain in local jail to handle some personal affairs before going to prison. (Nov. 21, 2018 Hearing Tr. at 25.)

{¶ 46} Third, the evidence of actual innocence put forth by appellant does not demonstrate a manifest injustice in this case.  Appellant does not aver in his own affidavit that he is innocent.  Rather, citing the Harris case and acquittal, appellant asserts he always wanted to go to trial and was pressured to not do so.  However, appellant's belief that he would have had a good chance of acquittal at trial is different than asserting his innocence.

{¶ 47} In addition to his own affidavit, appellant heavily relies on the new report of the private investigator.  The trial court found the report to be "misleading," "erroneous" and based on evidence known to appellant at the time of the plea.  (Apr. 7, 2021 Trial Court Decision at 7-8.)  We agree.  The report is based on unauthenticated and unsworn summaries of interviews and the investigator's review of existing reports and the Harris trial.  We note neither of the claimed alibi witnesses provided an affidavit in support of appellant's motion. The report misleadingly claims "no witnesses named [appellant] as the shooter" and a FaceTime call "eliminat[ed] appellant as the alleged shooter" without explaining those witnesses never claimed to have seen the shooters and without interviewing the one victim, T.C., who originally identified appellant and Harris as the shooters to police. (Mot. to Withdraw Plea, Ex. C, Report of Investigation at 2, 6.)

{¶ 48} Moreover, the private investigator's report does not, as appellant suggests, show that the jail "calls cannot be linked to [appellant] definitively in any way." (Appellant's Brief at 23.)  To the contrary, the report concedes: "[i]nmate PINS (used to make calls) are often times easy to obtain"; no information was available as to whether appellant was

housed in the same pod as the inmate; even if appellant was not in the same pod, obtaining that PIN would be "difficult" (not impossible); the calls were made to appellant's brother and Harris concerning destroying a gun; detectives found a gun (a "9mm Smith & Wesson MP") in the location indicated by the inmate caller; and [l]ab result indicated "one of the [gun]'s test fire casing had corresponding characteristics with one of the spent blazer 9mm cartridge cases" found at the scene of the shooting. (Mot. to Withdraw Plea, Ex. D-1 Discovery of Smith & Wesson 9MM Handgun at 2, 3.) Nevertheless, the report concludes,"[t]here is no evidence that this firearm was owned or in the control of [appellant]" or "ever used in the commission of a crime." (Mot. to Withdraw Plea, Ex. D-1 at 4.)

{¶ 49} The basis for this conclusion—that the Smith & Wesson MP was not used in the shooting—is the private investigator's determination that the bullet fragments found in the deceased victim's head and shoulder were determined to be .38 caliber, which according to the investigator could not be fired from the 9mm Smith & Wesson pistol. This conclusion does not account for any legal ramifications of that gun being linked, at minimum, to a spent cartridge at the scene of the shooting. Further, as noted by the trial court, this conclusion also fails to consider whether the (nearly) identical diameters of .38 caliber and 9mm bullets, as testified to by a firearms expert in the Harris trial, could render the .38 bullet fragments consistent with a 9mm bullet. *See* Apr. 2018 Harris Trial Tr. at 356-7 (testifying firearm expert opinion that fragments "were of the same size * * * .38 caliber or 9 millimeter caliber. They are the same in diameter " as the other three fragments).[5] We further note that the private investigation report acknowledges that the projectile found in the wall of appellant's home was found to match the projectiles recovered from Tuttle's vehicle and shoulder, further linking appellant to the shooting. (Mot. to Withdraw Plea, Ex. D-2 at 2.) The firearms expert testified to the same during the Harris trial.

{¶ 50} Overall, the new evidence provided by appellant, including the private investigation report and Powell affidavit, amounts to speculation that third-party drug dealers had more of a motive to shoot at the car than appellant, and speculation that appellant and Harris could not have committed the crime since they left the bar before the

---

[5] We note that, while appellant devotes time in his brief to contesting seizure of the gun in his home, appellee does not contend that gun was used in the shooting.

victims[6] and allegedly in a different colored car than one described as involved in the incident. This conclusion ignores the impact of the jail calls and subsequent recovery of the gun linked to the shooting, and appellant's motion bolsters, rather than diminishes, the likelihood that those jail calls were in fact made by him. Furthermore, having reviewed appellant's motion and supporting materials, we find appellant's investigation did not "uncover exculpatory evidence" that would arguably justify the nearly two-year delay in filing the motion. (Appellant's Brief at 9.) Contrary to appellant's argument, he has not called to this court's attention "serious questions" left unanswered, and we note that based on evidence particular to appellant, his case cannot be considered equivalent to Harris's case. (Appellant's Brief at 17.) Considering all the above, the trial court did not err in determining appellant failed to meet the " 'extremely high standard' " of showing manifest injustice premised on actual innocence. *Tabor* at ¶ 6, quoting *Price* at ¶ 11.

### 3. Lack of hearing

{¶ 51} Appellant adds, as an argument under his third assignment of error, that the trial court "further erred in not holding a hearing on this matter." (Appellant's Brief at 48.) Initially, we note that "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs." *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, citing App.R. 12(A)(1)(b). *See also Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding that appellate courts "rule[ ] on assignments of error only, and will not address mere arguments").

{¶ 52} Here, appellant did not separately assign this issue as an assignment of error and did not indicate the lack of a hearing as an issue necessary to resolving the third assignment of error. (Appellant's Brief at vii, viii.) We further note that in his motion to withdraw his plea appellant asked the trial court for an oral rather than evidentiary hearing and, on appeal, in addition to not clearly delineating this issue as an assignment of error, appellant has not asked this court to remand the matter for a hearing but rather asks this court to remand his case for a new trial. (Appellant's Brief at 52; Reply Brief at 20.)

---

[6] The parties here agree that video surveillance cameras show appellant and Harris leaving the bar at about 1:54 or 1:55 a.m., the eventual victims leaving the bar at about 2:30 to 2:35 a.m., and that police officers were dispatched to the scene of the shooting at 2:38 a.m. (Appellant's Brief at 27-29; Appellee's Brief at 4.) A detective testified during the Harris trial that appellant lived 1.8 miles from the bar. (Apr. 2018 Harris Trial Tr. at 733.)

{¶ 53} Nevertheless, to the extent the lack of a hearing bears on the third assignment of error, appellant's argument lacks merit. "A trial court's decision whether to hold a hearing on a postsentence motion to withdraw is subject to review for abuse of discretion." *State v. Moncrief*, 10th Dist. No. 13AP-391, 2013-Ohio-4571, ¶ 12 ("*Moncrief II")*. We are further guided by the view that "the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *See Smith* at paragraph two of the syllabus. As we stated in *State v. Rembert*, 10th Dist. No. 16AP-543, 2017-Ohio-1173, ¶ 20:

> Under Ohio law, "[a] trial court is not automatically required to hold a hearing on a post-sentence motion to withdraw a guilty plea." *State v. Walsh*, 5th Dist. No. 14-CA-110, 2015-Ohio-4135, ¶ 24, citing *State v. Spivakov*, 10th Dist. No. 13AP-32, 2013-Ohio-3343. Rather, "[a] hearing must only be held if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea." *Id*. In this respect, "a movant must establish a reasonable likelihood that the withdrawal is necessary to correct a manifest injustice before a hearing is required." *State v. Whitmore*, 2d Dist. No. 06-CA-50, 2008-Ohio-2226, ¶ 11. In general, "a self-serving affidavit or statement is insufficient to demonstrate manifest injustice," and "a hearing is not required if the record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice." *Walsh* at ¶ 24. Thus, "[w]here the defendant fails to 'carry his burden of presenting facts from the record or supplied through affidavit that establish manifest injustice or warrant a hearing,' we are not required to permit withdrawal of the plea or to hold a hearing." *State v. Muhumed*, 10th Dist. No. 11AP-1001, 2012-Ohio-6155, ¶ 47, quoting *State v. Garcia*, 10th Dist. No. 08AP-224, 2008-Ohio-6421, ¶ 15. *See also State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, ¶ 6, 884 N.E.2d 607 (8th Dist.) ("A trial court need not hold an evidentiary hearing on a post-sentence motion to withdraw a guilty plea if the record indicates the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice.").

{¶ 54} In this case, appellant did not challenge the trial court's determination that res judicata barred appellant's claim that he did not enter his plea knowingly, intelligently, and voluntarily due to ineffective assistance of counsel. That holding stands and, under our case law, a trial court does not abuse its discretion by denying a motion to withdraw a guilty

plea without a hearing where the application of res judicata to the motion is clear. *Moncrief II* at ¶ 13. *See also Gripper* at ¶ 13, 17 (finding the trial court did not err in failing to hold a hearing on defendant's motion to withdraw his guilty plea where the "argument defendant submitted to the trial court to support his motion failed as a matter of law" and the "defendant [wa]s unable to point to anything in the record to support his claim of ineffective assistance of counsel" aside from claims that ran contrary to the record of the plea and sentencing hearing).

{¶ 55} Furthermore, we disagree with appellant's assessment that "if the facts asserted by [a]ppellant had been accepted as true, it would mean there is no evidence linking him to the crimes * * * and, most notably * * * would show that someone else committed those crimes." (Appellant's Brief at 48.) Instead, if accepted as true, appellant's version of the facts would not establish his innocence, but would instead establish that certain people, who did not see the shooters, speculate that another person had greater motive to shoot the victims than appellant. In addition, the trial judge, who we note was the same judge to accept appellant's plea, did not abuse his discretion by evaluating the credibly of appellant's motion and supporting materials against the record in determining whether those claims warranted a hearing. *See State v. Dye*, 1st Dist. No. C-120483, 2013-Ohio-1626, ¶ 14 (holding trial court did not abuse its discretion in discounting the credibility of the affidavits without an evidentiary hearing); *State v. Miranda*, 10th Dist. No. 13AP-271, 2013-Ohio-5109, ¶ 21, citing *State v. Buck*, 9th Dist. No. 04CA008516, 2005-Ohio-2810, ¶ 14, quoting *State v. Russ*, 8th Dist. No. 81580, 2003-Ohio-1001, ¶ 12 ("An evidentiary hearing on a post-sentence motion to withdraw a guilty plea is not required if the 'record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice.' "). *See also Little* at ¶ 17-26 (determining the trial court acted within its discretion in determining, without a hearing, that a complaining witness's recanting affidavit in support of his assertion of actual innocence lacked credibility under the factors identified in *State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999), including whether the affidavit contradicted evidence in the record).

{¶ 56} On this record, appellant has not established a reasonable likelihood that the withdrawal of his plea is necessary to correct a manifest injustice, and, therefore, has not

demonstrated the trial court abused its discretion in determining this matter without a hearing. *Little* at ¶ 21 citing *Rembert* ¶ 20. Along these same lines, appellant has not indicated how the lack of a hearing prejudiced him in this case, considering the trial court's holdings on res judicata and manifest injustice, and therefore has not demonstrated reversible error on this basis. App.R. 12(B) and (D) (stating only prejudicial error requires reversal on appeal).

{¶ 57} After consideration of the record of this case and the arguments and supporting legal authority provided by the parties on appeal, we conclude the trial court did not err by considering the timing of appellant's filing of his motion or by determining appellant has not demonstrated a manifest injustice warranting withdrawal of his plea and a new trial on this record. As a result, appellant's first and third assignment of error lack merit.

{¶ 58} Accordingly, appellant's first and third assignments of error are overruled.

## IV.   CONCLUSION

{¶ 59} Having sustained appellant's second assignment of error and overruled appellant's first and third assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

NELSON, J., concurs.
JAMISON, J., dissents.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

JAMISON, J., dissenting.

{¶ 60}   The question whether res judicata bars a motion to withdraw a guilty plea is a question of law which an appellate court reviews de novo. *State v. Muhumed*, 10th Dist. No. 11AP-1001, 2012-Ohio-6155, ¶ 1.

## I.  LEGAL ANALYSIS

{¶ 61}   To facilitate the legal analysis, I shall consider appellant's assignments of error out of order.

### A. Appellant's Second Assignment of Error

{¶ 62} In appellant's second assignment of error, appellant contends that the trial court erred when it concluded that res judicata barred the claims in his motion to withdraw his guilty plea. I agree.

{¶ 63} "The first consideration for a trial or appellate court is whether the claims raised in the motion to withdraw a guilty plea are barred by res judicata." *State v. Creech*, 7th Dist. No. 2021-Ohio-3020, ¶ 20, citing *State v. Reynolds*, 3d Dist. No. 12-01-11, 2002-Ohio-2823, ¶ 27. "Only if the claim is not barred by res judicata should the court proceed to the manifest injustice standard." *Creech* at ¶ 20, citing *Reynolds* at ¶ 27.

{¶ 64} "Ineffective assistance of counsel may constitute a basis for a motion to withdraw a guilty plea pursuant to Crim.R. 32.1. [T]he doctrine of res judicata, however, bars review of a claim of ineffective assistance of counsel when such claims were or could have been asserted on direct appeal." *Creech* at ¶ 20, citing *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, ¶ 23, *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, ¶ 59. An exception to res judicata applies for a Crim.R. 32.1 motion to withdraw a guilty plea when the movant raises claims that were not available on appeal because they are based on evidence outside the record. *State v. Brown*, 167 Ohio App.3d 239, 2006-Ohio-3266, ¶ 12 (10th Dist.). *See also State v. Cartlidge*, 3d Dist. No. 13-21-06, 2021-Ohio-3787, ¶ 9, citing *State v. Brown*, 7th Dist. No. 18 CO 0025, 2019-Ohio-2717, ¶ 12, *State v. Helton*, 3d Dist. No. 8-08-06, 2008-Ohio-3601, ¶ 13, *State v. Fontes*, 3d Dist. No. 14-99-03, 1999 Ohio App. LEXIS 3513. To overcome res judicata, the movant must provide new evidence that was not a part of the original record in order to overcome res judicata. *Cartlidge* at ¶ 9.

{¶ 65} Here, much of the evidence presented by appellant in support of his motion to withdraw his guilty plea was not part of the trial court record and could not have been raised by appellant in support of an ineffective assistance of counsel claim on direct appeal. For example, appellant's affidavit contains appellant's recollection of several off-the-record conversations between appellant and his trial counsel in the critical days surrounding the withdrawal of his guilty plea. The averments in appellant's affidavit validate his claim he never intended to plead guilty and that his guilty plea was the result of pressure from his trial counsel and the trial court.

{¶ 66} Appellant also presented the affidavit of Brea Hall, who claims to have personal knowledge of conversations between appellant and his trial counsel concerning trial preparation and strategy. Hall also averred that during critical points in the proceedings, she provided appellant's trial counsel with potentially exculpatory evidence that appellant's counsel disregarded. Appellant also produced investigatory materials and reports issued by True Source containing alleged exculpatory evidence that was either not discovered by appellant's counsel when it should have been or was not shared with appellant and disregarded by trial counsel.[7] This evidence arguably supports appellant's claim that deficiencies in the performance of trial counsel prevented him from obtaining evidence to substantiate reasonable doubt.

{¶ 67} Appellant also produced the August 19, 2019, affidavit of Eric Powell, a friend of victim Dorell Taylor. In his affidavit, Powell averred that he visited Taylor at the hospital after the shooting and Taylor told him that appellant had nothing to do with the crime. Taylor told Powell that a local drug dealer known as Dame shot at their vehicle because of a recent dispute with Copeland over drugs. The transcript from the Harris trial reveals that the state did not call Taylor as a witness for the prosecution even though he was in the vehicle when the shots were fired and sustained a gunshot wound.

{¶ 68} Thus, appellant produced substantial evidence outside the trial court record to support his claim that his guilty plea was the product of ineffective assistance of trial counsel and coercion. Because this evidence exists outside the record in appellant's direct appeal from his conviction and sentence, res judicata does not bar the claim of ineffective assistance of trial counsel made by appellant in his Crim.R. 32.1 motion. *Brown* at ¶ 12, *Cartlidge* at ¶ 8.

### B. Appellant's First Assignment of Error

{¶ 69} In appellant's first assignment of error, appellant contends that the trial court erred when it denied his motion to withdraw his guilty plea as untimely filed. I agree.

{¶ 70} Unlike other postconviction remedies such a petition for postconviction relief brought pursuant to R.C. 2953.21 et seq., or a motion for a new trial under Crim.R. 59, there is no time limitation imposed upon a party moving to withdraw a guilty plea pursuant to

---

[7] I would note that an investigator was appointed by the trial court to conduct an investigation of the charges on behalf of appellant, but the report from the investigation is not part of the record in this case.

Crim.R. 32.1, based on a claim of manifest injustice. *State v. Hall*, 10th Dist. No. 05AP-957, 2006-Ohio-2742, ¶ 14. "Although Crim.R. 32.1 does not prescribe a time limitation, an 'undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.' " *Hall* at ¶ 14, quoting *State v. Smith*, 49 Ohio St.2d 261 (1977), at paragraph three of the syllabus.

{¶ 71} In denying appellant's Crim.R. 32.1 motion as untimely filed, the trial court found as follows:

> The length of time between Defendant's plea and his motion to withdraw his guilty plea is approximately two years. Defendant explains his delay in filing as a need to gather evidence, but he does not claim that he was unaware of the charges to which he plead guilty. Defendant claims he was coerced into the plea by his Counsel, therefore, no investigation of that fact was necessary, as he was aware of it on the date he was sentenced. He could have asked to withdraw his plea right away, but, instead, waited years. Defendant's motion indicates he began writing the Court "immediately" and sent an affidavit, but no letters or affidavits appear in the record.

(Nov. 6, 2020 State's Memo. Contra Def.'s Mot. to Withdraw Guilty Plea at 2.)

{¶ 72} I have difficulty understanding how appellant's knowledge of the offenses to which he pleaded guilty would shorten the time needed to conduct a thorough investigation of the facts underlying appellant's Crim.R. 32.1 motion. Similarly, appellant's contemporaneous knowledge of the alleged coercion, would not have obviated the need for appellant to obtain supporting affidavits, including the affidavit from Brea Hall. Nor did it obviate the need to employ True Source to conduct an extensive investigation in support of his claim of reasonable doubt. The True Source report also supports appellant's contention that he would not have pleaded guilty but for counsel's coercive tactics.

{¶ 73} Powell's affidavit is dated August 19, 2019, but he was interviewed by True Source at the Ross Correctional Facility on April 9, 2020. The True Source report to appellant's counsel is dated September 20, 2020. Appellant filed his motion to withdraw his guilty plea on September 23, 2020. Brea Halls' affidavit, dated December 4, 2020, was filed with the trial court on December 4, 2020. Thus, the record shows appellant promptly filed his Crim.R. 32.1 motion upon receipt of the supporting affidavits and evidence.

{¶ 74} Moreover, the record in this case shows that on December 28, 2018, appellant filed a timely notice of appeal from his conviction and sentence. There is no question that appellant could have asserted an assignment of error alleging that his plea was involuntary due to ineffective assistance of trial counsel and coercion. While appellant's direct appeal was pending, however, the trial court's jurisdiction to entertain a Crim.R. 32.1 motion on the same or similar grounds would have been limited. *State v. Wilson*, 2d Dist. No. 25482, 2014-Ohio-1764, citing *State ex rel. State Fire Marshal v. Curl,* 87 Ohio St.3d 568, 570 (2000). Moreover, the Supreme Court of Ohio has also concluded that Crim.R. 32.1 does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court, for this action would affect the decision of the reviewing court, which is not within the power of the trial court to do. *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas,* 55 Ohio St.2d 94, 97 (1978).

{¶ 75} Appellant subsequently elected to dismiss his direct appeal to pursue a Crim.R. 32.1 motion to withdraw his appeal. As will be addressed in my disposition of appellant's second assignment of error, the evidence produced by appellant in support of his Crim.R. 32.1 motion exists largely outside the record that would have been available to this court in a direct appeal. Given the timeframe for appellant to perfect a direct appeal, I cannot fault appellant for initially pursuing a direct appeal in this court, but upon reflection, electing to forego the direct appeal in favor of a motion to withdraw his guilty plea.

{¶ 76} This court granted appellant's motion and dismissed appellant's appeal on May 31, 2019. In my view, the relevant period of time attributable to appellant is the 16-month period between the date this court granted appellant's motion to dismiss his direct appeal and the date appellant filed his motion to withdraw his plea. It was not reasonable for the trial court to attribute "approximately two years" of delay to appellant's alleged lack of diligence. (State's Memo. Contra Def.'s Mot. to Withdraw Guilty Plea at 2.) Given the intervening appeal and the extensive investigation necessary to establish appellant's claim of manifest injustice, I would find appellant's motion to withdraw his guilty plea was timely filed and the trial court abused its discretion in finding the motion untimely. Thus, it was also an abuse of discretion for the trial court to consider the timing of appellant's Crim.R. 32.1 motion as a factor adversely affecting the credibility of appellant's affidavit and other evidence.

{¶ 77} Based on the foregoing, I would sustain appellant's first assignment of error.

## C. Appellant's Third Assignment of Error

{¶ 78} In appellant's third assignment of error, appellant argues the trial court erred when it determined that appellant's motion failed to set forth an actionable claim of manifest injustice based upon ineffective assistance of trial counsel and coercion. Appellant contends that his guilty plea was involuntary due to counsel's failure to investigate his case and prepare a defense based on reasonable doubt. Appellant also contends that his counsel coerced him into pleading guilty even though he told the trial court and his counsel that he wanted a trial.

### 1. Ineffective Assistance of Counsel/Coercion

{¶ 79} "Ineffective assistance of counsel can form the basis for a claim of manifest injustice to support withdrawal of a guilty plea pursuant to Crim.R. 32.1." *State v. Hernandez*, 10th Dist. No. 11AP-202, 2011-Ohio-5407, ¶ 13, citing *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813 (10th Dist.). "[A] guilty plea waives the right to assert ineffective assistance of counsel unless Hug's errors affected the knowing and voluntary nature of the plea." *Hernandez* at ¶ 13, citing *State v. Hill*, 10th Dist. No. 10AP-634, 2011-Ohio-2869, ¶ 15, citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992). "A defendant seeking to withdraw a guilty plea based on ineffective assistance of counsel must show: (1) that counsel's performance was deficient, and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have agreed to plead guilty." *Hernandez* at ¶ 13, citing *State v. Xie*, 62 Ohio St.3d 521 (1992), citing *Strickland v. Washington*, 466 U.S. 668 (1984).

{¶ 80} "The claim of a coerced plea and ineffective assistance of counsel are, in many respects, closely related." *State v. Watts,* 6th Dist. No. L-86-061, 1986 Ohio App. LEXIS 9536 (Dec. 31, 1986). In this instance, appellant contends that he did not enter a knowing, intelligent, and voluntary plea because he was coerced into pleading guilty by his trial counsel. This court has previously treated such claims as claims of ineffective assistance of counsel. *See State v. Moncrief*, 10th Dist. No. 08AP-153, 2008-Ohio-4594, ¶ 13, *Hernandez* at ¶ 13.

{¶ 81} In my view, appellant's affidavits and supporting evidence establish that his guilty plea was the product of a growing lack of conflict between appellant and trial counsel

that made the plea a product of coercion based upon the circumstances. Appellant's affidavit contains the following averments regarding his desire to go to trial:

> On Thursday November 15, 2018 my attorney (Robert Bob Krapenc) came to visit me at Franklin county jail. During this meeting my lawyer informed me on new information that was pertaining to my case. He said maybe we should start considering a plea. Something that have never been discussed or offered the entire time of my case (over 2years) while preparing for trial.
>
> I responded telling Mr. Krapenc that I would like to carry on with trial and he told me that he give me time to think about it and if I changed my mind then he would be back tomorrow but needs to know because the prosecutor would start subpoenaing witnesses, I did not hear from Krapenc until Monday November 19, 2018. When he told me that the prosecutor said the victim's family wants a year for every year that the victim was living. I told Krapenc that I did not agree with the terms and that I would like to carry on with trial as I have said the full pendency of my case. Krapenc then told me that I may be called to court tomorrow (November 20, 2018) because he thought that I would take a plea, which I never showed any signs of interest. Later that Monday I received a visit from a close friend that I consider my brother, showing me phone calls and text messages from my lawyer trying to let me take a plea after I made my decision to him hours ago. During my time having Mr. Krapenc as my lawyer I have always stressed trial.

(Sic passim.)  (Sept. 23, 2020 Mot. to Withdraw Guilty Plea Ex. A at 1.)

{¶ 82}  The transcript of the proceedings held on November 20, 2018, is consistent with the relevant allegations in the affidavit.  The transcript provides in relevant part as follows:

> THE COURT: Have you spent a lot of time with your lawyer talking about the potential for your prison time?
>
> THE DEFENDANT: Yes. Since Thursday.
>
> THE COURT: All right. You understand that if things don't go your way it very well could be that you spend the rest of your life in prison?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And it's very likely that there would not be parole in that instance. The years to life with the possibility of parole is a pretty generous offer under these circumstances,

sir. And I think you should consider it, as your attorney has told you. Fifteen years sounds like a long time, but it's a lot less time than life. Do you want to consider it some more and come back in a few minutes? You have a right to a trial. Absolutely you do. But I think most people in the courtroom, if not everyone, wonders about that at this point. You'll get a fair trial if you want one, but you're looking at a lot of time, sir.

*THE DEFENDANT: I'd rather just take it to trial.*

THE DEFENDANT: Yes.

THE COURT: I'm sorry, sir. I can't hear you.

*THE DEFENDANT: Trial.*

*THE COURT: You want a trial?*

Okay. Is there anything further we need to discuss at this point? I am going to go ahead and sustain the motion for joinder. That will be done.

*MR. HUGHES*: I don't think so, Your Honor. I mean, the state's prepared. Everybody's subpoenaed. The evidence is set to go, so the state is prepared to begin on Monday as scheduled.

(Emphasis added.) (Nov. 19, 2018 Tr. at 8-9.)

**{¶ 83}** The proceedings on November 20, 2018, concluded at 2:40 p.m. (Tr. at 9.) The record shows that at 2:43 p.m. on November 20, 2018, the trial court issued a criminal disposition sheet scheduling appellant's case for a proceeding to commence on November 26, 2018. This order is consistent with the wishes appellant expressed to the trial court in the November 20, 2018 proceedings. In his affidavit, appellant relates the events that occurred after the November 20, 2018 proceeding:

> After finalizing trial, I left the courtroom to a holding cell Where Mr. Krapenc approached me saying that I was stupid and he don't know what I was thinking, "its like a truck coming your way and I'm telling you to move and your just standing there." He said that I would lose if l went to trial and I was just handing them my life. He then stated that he would have to just let the state put on a case for two weeks with no objections because there would not be many to make and that he would not be able to represent me to the full of capability. I asked Mr. Krapenc what happened to the doubts in my case. I mentioned that my codefendant was found not guilty; the only eye witness testified that he did not see me there; also l had a good appeal on my case due to an illegal search. He responded

> telling me that at this point it didn't matter. After the conversation took a turn, I was sent back to my county jail cell, with still the mindset that I would be starting trial on Monday November 26th 2018.

(Mot. to Withdraw Guilty Plea Ex. A at 2.)

{¶ 84}  Following appellant's discussion with his trial counsel, the record shows that the trial court issued another criminal disposition sheet at 3:27 p.m. scheduling a jury trial to be held on November 21, 2018.  In appellant's affidavit, he discusses the events that took place on the morning of Wednesday November 21, 2018:

> The next day Wednesday 21, 2018, I was called to the a.m. courts thinking that there must have been error with the guards or courts because the last understanding I had was trial on Monday. After being placed in the holding cell, my lawyer stated that he got me 25years and if I didn't take it then he could promise me life without parole. I told him that I just put it on record less than 24hours ago in front of the judge that I was going to trial He said that I had a choice. I could see my daughter when she is 25years old or not at all, if I didn't make a decision then he would have to make one for me. I told Mr. Krapenc to take me in front of the judge so I can request for a new counsel to be appointed because I did not feel he was in my best interest. He stated that the judge was not doing that, my case has been on the docket too long and it would cost the courts too much money. The best he could do was take a year off the offer from the day before (26years) and ask for my court cost to be waived, which means I would be able to attend the store my time being incarcerated.

> He told me that the judge, prosecutor and the victim's family was all in the courtroom waiting for me to put the plea on record. Right there I felt defenseless, as if everyone knew about this but me. I asked Mr. Krapenc can I discuss this with my family and come back. He told me that sentencing must be done today because tomorrow is thanksgiving and Friday the courts would be closed. I asked if I did agree right now could I be called back for sentencing which at that moment I was trying to do whatever I could so I can stop feeling boxed in and get back to my family. Hoping they can contact the person with the correct authority to address this matter and he said no because the prosecutor thinks that you will try to withdraw the plea by then.

(Sic passim.)  (Mot. to Withdraw Guilty Plea Ex. A at 2-3.)

{¶ 85} In my view, the totality of the circumstances surrounding appellant's change of plea and immediate sentencing corroborate appellant's claim of coercion. In his affidavit, appellant was adamant that in discussions with his trial counsel he never expressed any desire to plead guilty. The transcript of the November 20, 2018 proceeding shows that appellant repeatedly told the trial court he wanted to go to trial.

{¶ 86} There is no dispute that, approximately seven months prior to the time appellant pleaded guilty, a jury acquitted appellant's co-defendant of all charges arising out of this incident. Appellant was aware of this fact at the time he told the trial court "*I'd rather just take it to trial*." (Emphasis added.) (Tr. at 8-9.) Though additional evidence could be produced by the prosecution in appellant's jury trial, the fact remains a Franklin County jury acquitted appellant's co-defendant of all charges arising out of this incident on essentially the same evidence. Thus, it is certainly reasonable for appellant to believe that he had a good chance of establishing reasonable doubt in a jury trial.

{¶ 87} Rule 1.2. of the Code of Professional Conduct sets out "Scope of representation and allocation of authority between client and lawyer," in relevant part as follows:

> (a) Subject to divisions (c), (d), and (e) of this rule*, a lawyer shall abide by a client's decisions concerning the objectives of representation and*, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. * * * A lawyer may take action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. *In a criminal case, the lawyer shall abide by the client's decision as to a plea to be entered,* whether to waive a jury trial, and whether the client will testify.

(Emphasis added.)

{¶ 88} The trial court record and appellant's affidavit show that appellant informed his trial counsel on November 19, 2018, he did not agree with the plea offer and he wanted to go to trial. Appellant claims that following his conversation with trial counsel appellant was contacted by a close friend who showed him text messages from his trial counsel urging his friend to convince appellant to plead guilty. Appellant's trial counsel confirmed that he had spoken with appellant's brother during the November 20, 2018 proceeding.

{¶ 89} Appellant's affidavit and the record of proceedings in the trial court also establish that the trial court, prosecutor, and appellant's attorney wanted the case resolved

before the Thanksgiving holiday. After taking appellant's plea, the trial court proceeded immediately to sentencing without first ordering a presentence investigation, as is customary. Appellant's affidavit permits the inference that the trial court took this unusual step because the prosecutor, appellant's counsel, and the trial court believed appellant, if permitted to collect his thoughts and gather with family members, would move the trial court to withdraw his plea prior to sentencing. "When a defendant claims innocence and wishes to withdraw a guilty plea prior to sentencing, a comparison of the interests and potential prejudice to the parties weighs heavily in favor of the interests of the accused." *State v. Cuthbertson*, 139 Ohio App.3d 895, 899 (7th Dist.2000).

{¶ 90} The record and appellant's affidavit provides convincing evidence in support of appellant's claim that he wanted to take his chances at trial and that he was pressured into pleading guilty. Thus, the evidence supports appellant's claim that his guilty pleas were not a voluntary waiver of his right to a jury trial but was a guilty plea that resulted from the need to conclude these matters prior to the Thanksgiving holiday.

{¶ 91} Appellee argues that the combined change of plea and sentencing hearing held on November 21, 2018, demonstrate compliance with Crim.R. 11. Appellant's affidavit, however, provides the following explanation:

> I was told my judge would ask me question toward the plea as far as was I forced and do I understand the terms of the plea. He told me to answer with no and yes, and that I didn't have to agree to being responsible for the crime toward the victim but I should say something sincere when asked If I had anything to say. In return my court cost would be waived and also l would only have my gun Spec time mandatory. I never received a piece of paper from my lawyer regarding the plea. He just asked me to sign a black box in the courtroom and whispered in my ear that everything was what we discussed, which I didn't agree to but was forced to.

(Mot. to Withdraw Guilty Plea Ex. A at 3-4.)

{¶ 92} Moreover, appellant's affidavit is not the only evidence produced by appellant in support of his claim of ineffective assistance of counsel and coercion. Appellant also presented the affidavit of Brea Hall, who averred as follows:

> I have personal knowledge regarding Javon Lyons interactions and attorney client relationship with Attorney Krapenc.

*I personally had interactions with Attorney Krapenc on Javon Lyons' behalf, and had several meetings with him.*

*I always felt that Mr. Krapenc felt Javon Lyons was guilty.*

*Javon Lyons always insisted on going to trial and never wanted to accept any plea offer in this matter.*

*I personally brought trial clothes to the jail for Javon Lyons.*

*\* \* \**

*I am willing to testify at an evidentiary hearing on this matter, as to my conversations with Attorney Krapenc and the evidence we provided to him.*

(Emphasis added.)  (Dec. 4, 2020 Def.'s Reply to Pl.'s Memo. Contra Ex. A at 1-2.)[8]

{¶ 93} When a Crim.R. 32.1 motion raises an ineffective assistance of counsel claim regarding a guilty plea, " 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty.' " *State v. Xie*, 62 Ohio St.3d 521, 524 (1992), quoting *Hill v. Lockhart*, 474 U.S. 52 (1985).  In my view, appellant produced substantial evidence in support of his contention that, but for trial counsel's coercive tactics, he would not have pleaded guilty.

{¶ 94} In denying appellant's motion to withdraw his guilty plea the trial court found that appellant's "self-serving" affidavit was insufficient to compel a hearing.  Even though "self-serving affidavits present credibility issues," they must still be given due consideration in light of the surrounding facts and circumstances.  *State v. Norris*, 8th Dist. No. 107894, 2019-Ohio-3768, ¶ 25, quoting *State v. Carter*, 8th Dist. No. 104351, 2016-Ohio-8150, ¶ 13. "[E]ven self-serving affidavits are more or less credible depending on the circumstances of the case and facts in the record."  *Norris* at ¶ 25, quoting *Carter* at ¶ 13, citing *State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999).  In this instance, appellant's affidavit should not have been summarily disregarded as self-serving in light of the corroboration in the transcript and Hall's affidavit, which provide corroboration for his claim of coercion.

{¶ 95} Based on the foregoing, I would find that the trial court abused its discretion when it denied his motion to withdraw his guilty plea because appellant's evidence taken in the totality of the circumstances establishes the guilty plea was not voluntary.

## 2. Ineffective Assistance of Counsel/Failure to Investigate

---

[8] The record does not disclose Hall's relationship to appellant.

{¶ 96}  "It is axiomatic that in cases where there is a likelihood of some success, the failure to investigate could warrant a finding that trial counsel was ineffective." *State v. Franklin*, 10th Dist. No. 89AP-593 (Oct. 12, 1989).  "Under *Strickland*, '[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions,' inasmuch as '[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.' "  *State v. Ibrahim*, 10th Dist. No. 17AP-557, 2020-Ohio-3425, ¶ 89, quoting *Strickland* at 691.  "Assessing 'what investigation decisions are reasonable depends critically on such information.' "  *Ibrahim* at ¶ 89, quoting *Strickland* at 690-91.

{¶ 97}  In ruling that appellant failed to produce evidence in support of his claim of manifest injustice, the trial court found as follows:

> Defendant is now challenging the evidence and second guessing his decision to plead guilty. Defendant was aware of the same evidence at the time he entered his plea. He admits he was even aware, prior to his plea, that his codefendant's trial resulted in a not guilty verdict. Therefore, absent any evidence, Defendant fails to show the manifest injustice necessary for the Court to allow Defendant to withdraw his guilty plea.

(Apr. 7, 2021 Decision Den. Def.'s Mot. to Withdraw Guilty Plea at 3.)

{¶ 98}  Contrary to the trial court's conclusion, appellant produced substantial evidence in support of his claim that his guilty plea resulted in a manifest injustice, including evidence of counsel's ineffective assistance in failing to make a reasonable investigation of his case, failing to consider exculpatory evidence provided to him when he should have, and refusing to abide by appellant's decision regarding trial counsel's continued representation.

{¶ 99}  As previously noted, a jury acquitted appellant's co-defendant of all charges arising out of this incident on essentially the same evidence.  Appellant and others involved in appellant's defense, including Hall, provided appellant's trial counsel with information and evidence in support of appellant's innocence.  The transcript of Harris' jury trial was made available to appellant's trial counsel.

### 3. True Source Report

{¶ 100} Appellant's investigative team subsequently developed at least one other suspect who had both motive and opportunity to commit the crimes at issue.  After interviewing numerous witnesses, viewing videotape FaceTime conversations, and

reviewing the transcript from the trial of appellant's co-defendant, appellant's investigative team concluded that the shooting was likely committed by a local drug dealer who had a recent dispute with the passengers in the victim's car over a failed drug deal. The evidence also shows that appellant had no involvement in the drug transaction that gave rise to this dispute.

{¶ 101} Appellant's investigative team interviewed Eric Powell, a friend of victim Dorell Taylor. Powell was at Rachel's Bar on the night in question. The investigative summary of the interview reads in relevant part:

> Powell states that he didn't know Javon Lyons prior to meeting him at the Ross Correctional Institution where he works as a barber but has seen him before at Rachel's Bar. Through the course of conversation Powell learned that Lyons was the person convicted of the I-70 shooting. Powell was familiar with the case and states he knew that Lyons was not the shooter, Powell states he has voluntarily come forward with his knowledge of events and that Lyons hasn't asked him, threatened him or promised anything for doing so.

(Sept. 23, 2020 Mot. to Withdraw Guilty Plea Ex. G-1 at 2.)

{¶ 102} Appellant submitted Powell's affidavit in support of his motion to withdraw his guilty plea. In his affidavit, Powell averred that he saw appellant and his co-defendant, Harris, at Rachel's on the date of the shooting. Powell saw appellant get into a black Mercedes Benz and leave the club around 1:30 a.m. There is no dispute that the shooting took place at 2:54 a.m., and that the shooter was in a silver Crown Victoria.

{¶ 103} When Powell learned of the shooting, he went to the hospital and spoke with Taylor. Powell related the conversation with Taylor in his affidavit as follows:

> I asked him what happened and he said he had got shot in his lower back end. Dorrell also said that the shooting had something to do with Ty's robbery situation at C1 and it was a retaliation. I asked him if he thought it was Jay or Robert because of the situation that occurred last night. Rell said he know they didn't do it nor played any part in the incident, because they left Rachel's about an hour- hour and a half before he did. He said it was Dame from the C1 situation, I asked him did he see him and he said no. He said he didn't even see the car because when the first shot went off he tried to jump to the back seat, and that's when he was shot in the lower back end. Joe was shooting back and knows who he was shooting at. Both Joe & Rell told me that it was Dame from the robbery that was at them. Late September Dame was

> gunned down in Reynoldsburg, so after we seen it on the news we just dropped the conversations about him and tried to forget that night.

*Id*. at 5.

{¶ 104} I find it significant that the trial court did not address appellant's claim that another person committed the crimes. Rather, the trial court, without mentioning appellant's primary theory of innocence or the evidence appellant produced in support of his theory, determined that res judicata barred appellant's claims and/or the claims were untimely filed. In ruling on appellant's first and second assignments of error, I would have determined res judicata did not bar the timely filed claims of manifest injustice appellant raised in his Crim.R. 32.1 motion. At a minimum, Powell's affidavit casts serious doubt on Copeland's initial identification of appellant as one of the shooters.

{¶ 105} In addition to the interview summaries and affidavits included with the report issued by True Source, Luanda Johnson provided appellant's investigators with video evidence of a FaceTime call she made to Joseph Speights, one of the passengers in the victim's vehicle. According to the investigators, Speights confirms that the shooting was motivated by an attempted robbery during a drug deal, and that appellant was not the shooter. Hall's affidavit supports appellant's claim that his trial counsel disregarded this exculpatory evidence when it was made available to the defense. Hall's affidavit provides in relevant part:

> Attorney Krapenc told us that he asked for a continuance because he requested transcripts from the co-defendant's trial, that resulted in an acquittal.
>
> I provided the Facetime Video used in Javon Lyons' Motion to Withdraw Plea to Attorney Krapenc during the initial case and he never utilized it.
>
> I sent him additional voice recording to Attorney Krapenc that was also never utilized.
>
> Both recordings in question point to the innocence of Javon Lyons.

(Def.'s Reply to Pl.'s Memo. Contra Ex. A at 2.)

{¶ 106} Ohio Prof.Cond.R. 1.2 provides that "[a] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." In his affidavit,

appellant avers: "I never received a piece of paper or mail from Mr. Krapenc, he stated that he does not make copies of discoveries which I have a right to, if it's not counsel only. I never had a chance to fully prepare a defense or fairly review my case because of Mr. Krapenc." (Mot. to Witdraw Guilty Plea Ex. A at 2.) In light of the evidence developed by True Source, including Powell's affidavit, appellant's trial counsel provided ineffective representation to appellant when he failed to pursue the agreed trial strategy based on reasonable doubt as appellant desired. Appellant provided convincing evidence that he would not have pleaded guilty had his trial counsel consulted with him regarding potentially exculpatory evidence.

### 4. Harris Transcript

{¶ 107} According to Hall's affidavit, appellant's counsel told her that he had requested a continuance of appellant's case to obtain the transcripts from the Harris trial. Hall's affidavit is corroborated by the record, which shows that on April 10, 2018, appellant's trial was continued to June 18, 2018, and that the Harris transcripts were filed with the trial court May 28, 2018. The transcript of the Harris trial essentially provided appellant's trial counsel with an effective strategy to employ in order to establish reasonable doubt.

{¶ 108} A review of the transcript reveals that Harris' trial counsel completely discredited the testimony of the state's primary witness, Copeland and Speights, by means of thorough and effective cross-examination. Harris' trial counsel was able to establish that on July 15, 2016, Speights had interacted with Harris and appellant at Rachel's and that he was able to identify both individuals as a result of that interaction. It is clear, however, that Speights did not see the Crown Victoria before the shots were fired, and he ducked behind the seats as the other shots rang out. At Harris' trial, Speights could not identify Harris or appellant as the shooters.

{¶ 109} Copeland's cross-examination revealed multiple incidents where he previously lied to police about the incident and provided testimony inconsistent with information he provided to police and his testimony on direct examination. Through effective cross-examination, Harris' trial counsel established that Copeland's recollection of the shooting was contrary to the physical evidence in that he insisted at trial that the shots came from a vehicle on the driver's side of Tuttle's vehicle, when the undisputed physical evidence established that the bullet holes were on the passenger's side. Even Speights recalled the shots being fired from a vehicle on the passenger's side.

{¶ 110} The Harris trial transcripts reveal that Harris' trial counsel also challenged the findings made by Mark J. Hardy, a Forensic Scientist of the Columbus Police Crime Laboratory ("CPCL"). As a result of effective cross-examination, Harris' trial counsel obtained concessions from Hardy that he could not positively match the spent projectiles and bullet fragments found at the scene with any of the shell cases or firearms recovered in the investigation. Based upon the evidence he examined prior to the Harris trial, Hardy could not exclude the possibility that seven or more different firearms were used during the shooting. In closing argument, Harris' trial counsel raised these and other questions regarding the credibility and probative value of the state's evidence in creating reasonable doubt among the jurors.

{¶ 111} As previously noted, the outcome of Harris' trial certainly provided appellant with a reasonable basis to believe that his trial counsel could establish a reasonable doubt in the mind of the jurors, as they had previously agreed. Under the circumstances, appellant's trial counsel violated a duty he owed to appellant by failing to comply with appellant's wishes regarding trial strategy and failing to provide competent representation. Had counsel done so, appellant's affidavit establishes he would not have pleaded guilty.

### 5. CPCL Report

{¶ 112} In denying appellant's Crim.R. 32.1 motion, the trial court concluded:

> Defendant's investigator provides misleading information with respect to the bullet from the victim's head. (Defendant's Exhibit C.) While he provides a view of bullets standing up to show a difference in length of the casings, he neglects to provide a view that would show that the diameter of a 9mm and .38 caliber are essentially the same. A .38 Special casing is different than a 9mm casing. However, the diameter of a 9mm bullet is .355 mm and the diameter of a .38 Special bullet is .357. As a general 'class characteristic,' bullets that measure three thousandths of an inch are known as .38 caliber as they are .38 inches in diameter. A .38 caliber bullet fragment is entirely consistent with a 9mm bullet. The fragment from the victim was listed as .38 caliber, the gun located, after Defendant revealed its whereabouts in the jail call, is a 9mm. Defendant's claims that the victim could not have been shot by a 9mm are simply erroneous. *A review of the Columbus Police Crime Lab's analysis of the handgun that was recovered, pursuant to the recording of the Defendant, links*

> *that particular firearm to a spent casing from the crime*
> *scene. This evidence was available and known to Defendant*
> *at the time of the plea.*

(Emphasis added.)  (Decision Den. Def.'s Mot. to Withdraw Guilty Plea at 7-8.)

{¶ 113} The above-quoted portion of the trial court's ruling is a verbatim recitation of the state's memorandum in opposition to appellant's motion to withdraw his guilty plea. The state, however, did not attach a copy of the CPCL supplemental report to its memorandum, and the report is not part of the trial court record.  Thus, there is no evidence in the record to support the trial court's conclusions regarding the CPCL report.

{¶ 114} Appellant produced evidence casting doubt on the importance of the "jail calls" appellant allegedly made to his brother that led to the discovery of a 9mm handgun law enforcement found in a wooded area near appellant's home.  After noting that the 9mm handgun found as a result of the jail calls was "inoperable," appellant's chief investigator expressed the following opinion about the CPCL supplemental report:

> Based upon my review and analysis of the associated reports
> and lab results it is my opinion the S&W 9mm M&P Pistol was
> not the firearm used in the murder of Mr. Tuttle. There is no
> evidence that this firearm was owned or in the control of Mr.
> Javon Lyons. There is no evidence this weapon was ever used
> in the commission of a crime.

(Mot. to Withdraw Guilty Plea Ex. D-L at 4.)

{¶ 115} There is no dispute that the bullet recovered from the victim was a .38 caliber. Even if it could be proven that a 9mm handgun can fire a .38 caliber ammunition, a conclusion which appellant's investigators reject, the report submitted by appellant's investigative team casts doubt on the probative value of the 9mm handgun found by law enforcement as a result of the jail calls. (Decision Den. Def.'s Mot. to Withdraw Guilty Plea at 8.)  The CPCL supplemental report was a critical piece of evidence produced by the state just weeks before the scheduled trial date.  Under the circumstances, trial counsel's failure to mount any challenge to the supplemental report is inexcusable and ineffective assistance.

{¶ 116} Ohio Prof.Cond.R. 1.1 provides: "A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Ohio Prof.Cond.R. 1.3 states that "a lawyer shall act with reasonable diligence and promptness in

representing a client." The evidence produced by appellant and the record in this case establish that trial counsel violated this fundamental rule of professional conduct.

{¶ 117}        The transcript shows that appellant's trial counsel simply accepted the opinions expressed in the CPCL supplemental report without question:

> THE COURT: * * * Mr. Krapenc, I assume you've had discussions with your client regarding this plea offer?
>
> MR. KRAPENC: Yes, Your Honor, we have.
>
> THE COURT: All right.
>
> MR. KRAPENC: If I may just supplement a little bit, this case over the last two years has evolved. It's not quite the same case it was. Some jail calls have been retrieved by the state and shared with the defense. *Recently about two weeks ago there was additional jail calls which led to the discovery of a weapon, which has been test-fired. The casing of that test-fire matches a casing found at the homicide scene, and a bullet from that gun matches a bullet that was found in my client's residence.*
>
> I have gone over all of this new material, even though we've only had it for really maybe a week, a week and a half. But I have reviewed this. We've listened to the jail calls where my client's voice allegedly is on, looked at the reports for the guns, things like that.

(Emphasis added.) (Nov. 20, 2018 Tr. at 5-6.)

{¶ 118}        "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *State v. Bradley*, 42 Ohio St.3d 136, 146 (1989), citing *Strickland,* supra at 691. Here, the record shows that on June 23, 2017, appellant's former trial counsel moved the trial court to appoint a firearms expert at the state's expense. In the motion, appellant's former trial counsel provided the following:

> The State will be relying on the testimony and work of Mark J. Hardy, a Forensic Scientist of the Columbus Police Crime Laboratory. Mr. Hardy examined the firearm recovered, the spent cartridges, casings, and bullet fragments. To prepare an adequate defense counsel must have the opportunity to have this evidence reviewed by an independent forensic scientist. To protect this defendant's due process rights an independent expert is necessary.
>
> * * *

> The State's case hinges on the results of the firearm/ballistic reports provided by the Columbus Police Crime Laboratory. To ensure that this defendant receives a fair trial and that his right to due process is not violated an independent expert is necessary to review the evidence and reports provided by the State. *Counsel is not qualified to review firearm/ballistic evidence to prepare for trial in this matter, an expert is needed for preparation of an adequate defense.*[9]

(Emphasis added.) (June 23, 2017 Mot. for Court Appointed Funds and Appointment of Forensic Expert at 2-4.)

{¶ 119} On June 27, 2017, the trial court granted the motion, appointed a forensic firearms expert to assist counsel in preparation of the case and allotted the sum of $6,500 for the purpose of retaining expert services. Appellant's former trial counsel withdrew from the case on November 28, 2017, and attorney Krapenc was appointed.

{¶ 120} In my view, the June 23, 2017, motion filed by appellant's former trial counsel and the trial court's favorable response shows a reasonable investigation in this case requires retention of an independent forensic expert for the defense to review firearm/ballistic reports issued by the CPCL. Here, the significance of the supplemental report issued by CPCL cannot be overstated, as the report allegedly links the 9mm handgun associated with appellant to the crime scene.

{¶ 121} "*Strickland* requires defense counsel 'to make reasonable investigations' before trial." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 247, quoting *Strickland* at 689. The record reveals that appellant's trial counsel, without the aid of an independent firearms/ballistics expert, reviewed the supplemental report issued by CPCL and concluded that appellant had no choice but to plead guilty. The transcript of the November 20, 2018 proceedings shows that rather than seeking a continuance in order to investigate the findings in the supplemental lab report and requesting appointment of a firearm's expert to challenge the opinions expressed therein, appellant's trial counsel concentrated his efforts on pressuring appellant to plead guilty before the Thanksgiving holiday. Appellant's affidavit establishes that he would not have pleaded guilty on

---

[9] 2929.024 provides in relevant part:
If the court determines that the defendant is indigent and that investigation services, experts, or other services are reasonably necessary for the proper representation of a defendant charged with aggravated murder at trial or at the sentencing hearing, the court shall authorize the defendant's counsel to obtain the necessary services for the defendant, and shall order that payment of the fees and expenses for the necessary services be made in the same manner that payment for appointed counsel is made pursuant to Chapter 120 of the Revised Code.

November 21, 2018, had his trial counsel requested the services of a firearm's expert to challenge the CPCL supplemental report.

{¶ 122} In his affidavit, appellant avers that in the meeting with his trial counsel immediately following the November 20, 2018 proceeding, appellant told his trial counsel: "[T]ake me in front of the judge so I can request for a new counsel to be appointed because I did not feel he was in my best interest." (Mot. to Withdraw Guilty Plea Ex. A at 3.) According to appellant, his trial counsel responded: "the judge was not doing that, my case has been on the docket too long and it would cost the courts too much money." *Id.* Ohio Prof.Cond.R. 1.16(a) provides that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if * * * the lawyer is discharged." Appellant's affidavit establishes his trial counsel violated Rule 1.16(a), by refusing to honor his clients wishes regarding his continued representation.

{¶ 123} The trial court dismissed appellant's affidavit as self-serving without providing a reasonable explanation for doing so and disregarded other affidavits and evidence produced by appellant based on an erroneous conclusion that appellant's claims were barred by res judicata and untimely filed. In my view, appellant has established that his guilty plea was not voluntary due to ineffective assistance of counsel and coercion. Thus, the evidence submitted by appellant in connection with his motion establishes withdrawal of appellant's guilty plea is necessary to correct a manifest injustice. *See State v. Williams*, 12th Dist. No. CA2009-03-032, 2009-Ohio-6240, ¶ 14. Accordingly, I would hold that the trial court abused its discretion by denying the motion.

{¶ 124} For the foregoing reasons, I would sustain appellant's third assignment of error.

## II. CONCLUSION

{¶ 125} Based upon the foregoing, I would sustain appellant's first, second, and third assignments of error, and reverse the judgment of the Franklin County Court of Common Pleas and remand this matter for the court to vacate the judgments issued December 3, 2018, permit appellant to withdraw his guilty plea, and schedule a jury trial.

————————————